[No. 7123–5–III. Division Three. August 12, 1986.]

Cowles Publishing Company, *Appellant,* v. The State Patrol, et al, *Respondents.*

*Duane M. Swinton* and *Witherspoon, Kelley, Davenport & Toole, P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Thomas G. Holcomb, Jr., Assistant,* for respondent State.

*Donald C. Brockett, Prosecuting Attorney,* and *David A. Saraceno, Deputy,* for respondent Spokane County.

*James C. Sloane, Corporation Counsel,* and *Rocco N. Treppiedi* and *Richard C. Robinson, Assistants,* for

respondent City of Spokane.

*Gregory G. Staeheli* and *Kain & Snow,* for respondent Spokane Police Guild.

*Richard W. Kuhling* on behalf of the American Civil Liberties Union, amicus curiae.

*Michael J. Killeen,* on behalf of Allied Daily Newspapers, amicus curiae.

*Leo E. Poort,* on behalf of Washington Association of Sheriffs & Police Chiefs, amicus curiae.

MUNSON, J.—The Spokesman–Review and Spokane Chronicle (newspapers) appeal the Superior Court's order denying disclosure of certain internal investigatory records compiled by three law enforcement agencies (agencies). We hold (1) the court erred in not applying the privacy test set out in *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978); (2) the officers' names were not exempt on the basis of the personal information exemption provided in RCW 42.17.310(1)(b); (3) the investigative agency exemption as provided in RCW 42.17.310(1)(d) is not applicable; and (4) the general personal privacy interest enunciated in *In re Rosier,* 105 Wn.2d 606, 717 P.2d 1353 (1986), decided while this case was on appeal, is not applicable. Accordingly, we reverse.

During the summer of 1983, the newspapers' reporters, investigating an incident in which two Spokane police officers shot and killed a man, were told those officers may have been involved in a prior incident in which they allegedly used excessive force. The reporters also heard that the prior incident generated a citizen's complaint resulting in the officers being reprimanded. In an effort to substantiate this information, the newspapers requested, pursuant to the provisions of the public disclosure act, RCW 42.17, that the Spokane Police Department release all internal investigation records pertaining to citizens' complaints against police officers; the newspapers sought the information on the same

basis available to a private citizen. This request was later amended to seek only those records or files generated by complaints filed during 1983 and which were determined to be true following an internal affairs investigation, *i.e.*, "sustained." Similar requests were made to the Spokane County Sheriff's Department and the Washington State Patrol, relating only to instances occurring within Spokane County during 1983.

The three agencies took identical positions; they would provide only edited copies of the documents requested and would delete information relating to the "identity" of (1) the officers involved, (2) the complaining parties, and (3) other witnesses who had been interviewed. The agencies claimed the deletions were necessary to protect the privacy interests of the persons named in the documents, necessary to insure effective internal affairs investigations, and the confidential reporting of complaints. RCW 42.17.260(1).

Subsequently, the Spokane Police Department and the Spokane Sheriff's Department did release eight edited files with the aforementioned deletions. The Washington State Patrol offered to provide similar information, but was not requested to do so.[1]

The newspapers initiated this action and obtained an

---

[1]Six edited incidents were reported by the Spokane Police Department; they are: (1) harassment by a police officer of an accident victim as the victim lay injured on the stretcher; (2) the use of obscene language by an officer while arresting an individual for running a stop sign; (3) the false arrest and incarceration of shoplifting suspect by an officer; (4) the failure of a supervising police officer to take a citizen's complaint concerning a police officer's arrest; (5) the stopping of an off–duty officer, in civilian clothes, for weaving in and out of traffic on a motorcycle at 90 m.p.h.; and (6) harassment by an off–duty reserve officer of private citizens at their home. Two edited reports were released by the Spokane Sheriff's Department which encompassed: (1) purchase of beer for a minor by an off–duty deputy sheriff; and (2) the use of abusive language by deputies after they broke down the door to a house while looking for theft suspects, one deputy subsequently struck a handcuffed individual, after he spat in the deputy's face.

An editor of the newspapers testified only one of these incidents is "newsworthy." Since the names of the officers were not disclosed, the record does not reflect whether any of the officers involved in these incidents were involved in the shooting incident which prompted the request for disclosure.

order requiring the three agencies to show cause why they refused to disclose the unedited versions of the records. RCW 42.17.340(1). The Spokane Police Guild was allowed to intervene and a testimonial hearing was held on July 12 and 13, 1984.

The following facts, developed at the testimonial hearing, are not in serious dispute. The pattern of investigation is similar with each agency. They maintain an internal affairs division, which upon receipt of a complaint, investigates the underlying facts. The officer involved is required to disclose his or her recollections with the understanding that no facts thus related may be used in any criminal investigation. The officer does not have the right to interrogate other witnesses, is not entitled to assert the privilege against self-incrimination, and is subject to dismissal upon refusal to respond. *Seattle Police Officers' Guild v. Seattle*, 80 Wn.2d 307, 494 P.2d 485 (1972). On the basis of these interviews and any other evidence, the head of the agency makes a determination whether to sustain the complaint and impose a sanction or dismiss it. Approximately 10 percent of the complaints registered either by citizens or from within an agency are sustained. From that determination the officer may appeal and is accorded a public hearing. RCW 43.43-.070 (Washington State Patrol); RCW 41.14.120 (county sheriffs); and RCW 41.12.090 (city police).[2]

Testimony also indicated the internal affairs investigative files are maintained separately from the officer's personnel file, although a notice of sanction is placed in the personnel file. The Washington State Patrol disseminates information concerning sanctions through its Teletype network to each of its divisional offices, which in turn discloses the name of the disciplined officer and the infraction.

Additionally, officers of each agency testified concerning the apprehension and anxiety arising from the filing of such a complaint; these effects are felt not only by the officers,

---

[2]The civil service ordinance of Spokane denies an officer a public hearing if a suspension is 5 days or less.

but also the officers' families and the department. This testimony was supported by a police psychologist with extensive experience in the state of California. He testified that the normal high level of stress accompanying the duties of an officer was significantly increased by the added stress of an internal affairs division investigation. He also addressed the stress, aggravation, and humiliation visited upon family members of officers who complained against colleagues. The psychologist expressed a concern that disclosure of this information could result in a "code of silence" amongst the officers, resulting in instances of misconduct not being reported.

Based on this testimony, the court entered findings of fact, conclusions of law, and an order concluding the internal investigative reports were exempt from disclosure. Specifically, the court found release of the names of the individual officers, coupled with other factual data in the reports, would violate the officers' rights of privacy within the context of the personal information exemption, RCW 42.17.310(1)(b). Further, the court held the requested information constituted "specific investigative records" and concluded the nondisclosure of the officers' names was "essential to effective law enforcement" as exempt under RCW 42.17.310(1)(d).

I

REVIEW UNDER THE PUBLIC DISCLOSURE ACT
OF 1972

This act was enacted by initiative in November 1972; it contains seven separate sections, codified in RCW 42.17; the sections with which we are concerned are codified in RCW 42.17.250–.340, "Public Records". The basic purpose of this act

is to provide a mechanism by which the public can be assured that its public officials are honest and impartial in the conduct of their public offices. . . .
. . . [I]t is to allow public scrutiny of government, rather than to promote scrutiny of particular individuals who are unrelated to any governmental operation.

*In re Rosier, supra* at 611. The act's provisions are to be construed in favor of permitting full public access to government records commensurate with individual privacy and the continued efficient administration of the government.

■ The act does provide for certain exemptions, but as *Hearst* notes, the act is to be liberally construed to require expansive disclosure. *Hearst,* at 128. Accordingly, a positive duty exists to disclose public records unless the information contained therein falls within one of the specific exemptions. Given that the act is to be liberally interpreted, these exemptions are narrowly construed, *Barfield v. Seattle,* 100 Wn.2d 878, 884, 676 P.2d 438 (1984); the burden of proof is on the agency seeking to prevent disclosure to demonstrate that the requested information falls within an exemption. *In re Rosier, supra* at 616 (citing *Hearst*). Moreover, RCW 42.17.340(2) mandates that "[c]ourts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, *even though such examination may cause inconvenience or embarrassment to public officials or others.*" (Italics ours.)

■ Turning specifically to the standard of review, RCW 42.17.340(2) states "[j]udicial review . . . shall be de novo"; that standard of review, however, is applicable to the superior court. Subsequent review of the superior court's factual determinations is not de novo, unless the record "consists entirely of written and graphic materials [with] no trial court assessment of witnesses' credibility or competency." *In re Rosier, supra* at 616.

Here, much if not all of the evidence presented to the Superior Court consisted of witness testimony. All but two of the trial court's findings are unchallenged. Unchallenged factual findings are verities for purposes of our review. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 93 Wn.2d 210, 608 P.2d 254 (1980). The newspapers do challenge two of the findings of fact, namely: (1) that disclosure would seriously affect officer and agency moral and cause a negative psychological effect on the officers and their families (finding of fact 29); and (2) the disclosure would have a

significant effect on the officers' and their families' privacy (finding of fact 30).[3] These findings are supported by the record.

Nonetheless, this court, accepting those facts, must engage in an independent determination as to the intended scope of the disclosure and exemption provisions of the act. *State Human Rights Comm'n v. Seattle*, 25 Wn. App. 364, 368, 607 P.2d 332 (1980) (citing *Hearst*). The newspapers' principal contentions are that: (1) the *Hearst* definition of invasion of privacy is applicable in determining whether the information sought comes within the exemptions; (2) the officers' names appearing in the records are not exempt under the personal information exemption (RCW 42.17-.310(1)(b)); and (3) nor are they exempt under the investigation records exemption (RCW 42.17.310(1)(d)).

## II
## Hearst Corp. v. Hoppe

The trial court held the standard for determining whether disclosure of information violated a person's right to privacy as adopted in *Hearst* was restricted to the exception set out in RCW 42.17.310(1)(c), relating to taxpayer information given in connection with the assessment or collection of any tax. The trial court erred in reading *Hearst* so narrowly.

 The phrase "right to privacy" appears numerous times within the act, including the exemptions in question here, without definition. In *Hearst,* at 135–36, the court adopted Restatement (Second) of Torts § 652D (1977) as the appropriate standard by which to determine whether release of tax information violates a person's right to privacy. That standard is:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a

---

[3]To the extent finding of fact 30 is a conclusion of law erroneously designated as a finding of fact, it is subject to review. *Local 1296, Int'l Ass'n of Firefighters v. Kennewick*, 86 Wn.2d 156, 161–62, 542 P.2d 1252 (1975).

kind that

(a) *would be highly offensive to a reasonable person,* and

(b) *is not of legitimate concern to the public.*

(Italics ours.) When similar words or phrases are used throughout a statute, the meaning is presumed to be the same. *Garrison v. State Nursing Bd.,* 87 Wn.2d 195, 197, 550 P.2d 7 (1976); *DeGrief v. Seattle,* 50 Wn.2d 1, 11, 297 P.2d 940 (1956). Thus, the Legislature must have intended that the right to privacy phrase be interpreted in as uniform a manner as possible throughout the act. *Cf. Columbian Pub'g Co. v. Vancouver,* 36 Wn. App. 25, 29, 671 P.2d 280 (1983) (*Hearst* standard applied to exemption in RCW 42.17.310(1)(b)); *Laborers Int'l, Local 374 v. Aberdeen,* 31 Wn. App. 445, 448–49, 642 P.2d 418, *review denied,* 97 Wn.2d 1024 (1982) (*Hearst* standard applied to RCW 42.17.260(1)); *State Human Rights Comm'n,* at 367–68 (*Hearst* standard applied to RCW 42.17.260(1)). Since we conclude the right to privacy is to be interpreted according to *Hearst,* as refined by *In re Rosier, supra,* we proceed to discuss the applicability of the exemptions in that context.

## III
### PERSONAL INFORMATION EXEMPTION

RCW 42.17.310(1) provides the following is exempt from public inspection and copying:

(b) Personal information in files maintained for employees . . . of any public agency to the extent that disclosure would violate their right to privacy.

### A. Personal Information

The newspapers initially challenge the trial court's conclusion that the names of the officers constituted "personal information" since the files in which their names appear relate to a particular officer. We agree with the newspapers; this exemption does not require all information be exempted merely because it relates to a particular individual. If this reasoning was taken to its logical extreme, all public records containing a reference to a particular person

would qualify as personal information; the act's broad policy of disclosure mandates a broader construction.

■ Although personal information is not defined in the act, the Oregon courts have suggested the definition include that information "normally not [to] be shared with strangers." *Turner v. Reed,* 22 Or. App. 177, 538 P.2d 373 (1975). Moreover, as noted above, RCW 42.17.340(2) mandates disclosure of public records even though "inconvenience or embarrassment to public officials or others" ensues. Here, five of the files containing the names relate to complaints brought against officers while on duty; they relate to the officers' professional performance; the names in these files do not constitute personal information. *Columbian Pub'g Co.,* at 29–30. The names in the files of the officers who were found to have acted improperly while off duty are also disclosable; disclosure of their names in conjunction with the other information contained therein is not sufficiently offensive to constitute personal information.

### B. Maintained for Employees

■ The next issue is whether these files were maintained for the officers as required by this exemption. Here, the agencies assert any file relating to a particular officer is "maintained" for that officer within the meaning of this exemption. Again, the contention is overbroad. That provision was intended to shield only that highly personal information often contained in employment and other personnel files. Such information might include, but is not limited to, the particular employee's union dues, charitable contributions, deferred compensation, medical records, disabilities, employment performance evaluations, and reasons for leaving employment. *See State Human Rights Comm'n,* at 369–70. Likewise, the phrase may include those sensitive records relating to health, or marital and family information necessary for calculating health plans, job benefits, and taxes.

However, the files in question here are maintained separately from files containing such personal information; we conclude the internal affairs files containing the officers'

names are not maintained for the officers.

## C. Violates Right to Privacy

The newspapers also assign error to the Superior Court's conclusion that release of the officers' names in conjunction with the other information in the files would constitute an invasion of privacy. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 136, 580 P.2d 246 (1978), in adopting the Restatement (Second) of Torts § 652D standard for determining an invasion of privacy, also included the comment thereto:

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

Thus, in light of *Hearst*'s adoption of the Restatement § 652D and the comment thereto, we examine whether the information sought is (a) highly offensive and (b) of legitimate public concern. This determination is made in light of the statutory caveat that information must be disclosed even though embarrassing to public officials or others. RCW 42.17.340(2); *Hearst*, at 135–36; *Columbian Pub'g Co.*, at 30; *Laborers Int'l*, at 448–49.

Here five of the files sought were generated by complaints relating solely to the public, on–duty performances of the officers. These files contain no information of the officers' "sexual relations", "family quarrels", "medical reports", or other personal information of that degree of intimacy. Although the officers may be embarrassed by the release of their names in conjunction with the information in these files, the disclosure of the details of an officer's

misconduct, while in the performance of his public duties, is not highly offensive.

The release of the officers' names in the three complaints concerning "off-duty" conduct is only slightly more difficult. We recognize that public employees do not abdicate all their privacy rights merely because they are employed by a governmental agency. Although an officer may technically be on "24-hour" duty for the purposes of his or her department, disclosure of an officer's off-duty conduct is generally unwarranted under the act. Here, the files relating to two of the off-duty incidents, namely: (1) the officer who furnished beer to a minor and (2) the officer speeding on his motorcycle, do not reflect whether this conduct resulted in separate criminal charges. Notwithstanding, these acts do not appear to be "highly offensive" in the context of the *Hearst* interpretation of the officer's rights to privacy. The third incident involved an off-duty reserve officer acting under color of authority while harassing citizens in their own home; such action borders on "on-duty" conduct and again information relating to the incident would not be highly offensive. Thus, disclosure of the officers' names in conjunction with the other information contained in the files would not be highly offensive within the context of the right to privacy as interpreted by our Supreme Court.

■ *Hearst* did not reach the second part of the privacy test, *i.e.,* whether the requested information was of "legitimate public concern." *In re Rosier*, 105 Wn.2d 606, 613–14, 717 P.2d 1353 (1986) makes clear that whenever a public record is not highly offensive, the "public interest in disclosure outweighs" any individual privacy interest. We have no doubt that the on-duty conduct of law enforcement officers is of legitimate public concern. *Rawlins v. Hutchinson Pub'g Co.*, 218 Kan. 295, 543 P.2d 988, 992 (1975). Likewise, the off-duty incidents in which the record does not reflect whether criminal charges were brought are of legitimate public concern; if charges were brought, the matters were already public and if not, there may be legitimate public

concern as to why there were no criminal charges. With respect to the third incident, the public has a legitimate concern in the conduct of off–duty reserve officers who, under "color" of their positions, intrude into the private lives of private citizens in their own homes.

Thus, we conclude that the officers' names, in conjunction with the incidents set forth above, are not exempt under RCW 42.17.310(1)(b).

## IV
### INVESTIGATIVE RECORDS EXEMPTION

RCW 42.17.310(1)(d) provides files are not disclosable if they are:

> specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

### A. Investigative Records

The act does not define "investigative records". It is clear these are investigative records compiled by law enforcement agencies. However, it is an open question whether internal, administrative reports result from the type of "investigation" contemplated by the act. The newspapers contend the information is not exempt relying on *Columbian Pub'g Co. v. Vancouver, supra,* for the proposition that internal affairs investigations are mere personnel matters performed by the agencies in their administrative capacities.

 The distinction between records generated by law enforcement agencies for internal administration, as opposed to criminal investigations, is clearly drawn by federal decisions interpreting an "analogous" investigatory records exemption under the Freedom of Information Act. 5 U.S.C. § 552(b)(7). *Hearst,* at 128, points out that federal decisions interpreting the act are "helpful in construing our own." In *Stern v. FBI,* 737 F.2d 84, 89 (D.C. Cir. 1984), the court concluded that "an agency's general internal moni-

toring of its own employees to insure compliance with the agency's statutory mandate and regulations is not protected from public scrutiny . . ." The court's rationale for rejecting the argument that internal investigation of wrongdoing generates an investigative record is that:

> If this broad interpretation is accepted, however, we immediately encounter the problem that most information sought by the Government about its own operations is for the purpose ultimately of determining whether such operations comport with applicable law, and thus is "for law enforcement purposes." Any internal . . . monitoring conceivably could result in disciplinary action, in dismissal, or indeed in criminal charges against the employees. But *if this broad interpretation is correct, then the exemption swallows up the Act . . . [and] defeats one central purpose of the Act to provide public access to information concerning the Government's own activities.*

(Italics ours.) *Stern,* at 89 (quoting *Rural Housing Alliance v. USDA,* 498 F.2d 73, 81 (D.C. Cir. 1974)); *Goldschmidt v. USDA,* 557 F. Supp. 274 (D.D.C. 1983).

The information sought here is not related to normal criminal investigations; it relates to public employee misconduct. There is little reason to label these files as the type of "investigative reports" contemplated by the act simply because the investigations are conducted by law enforcement personnel. Although *Stern* is factually distinguishable, we find its reasoning persuasive and conclude this type of investigation does not generate a record protected from scrutiny, particularly as the investigations here are concluded and the sanctions, if any, were imposed.

### B. Law Enforcement Agencies

It cannot be denied, as noted earlier, that these investigations resulted in files compiled by law enforcement agencies. Thus, we must determine whether the nondisclosure of these files is essential to effective law enforcement.

### C. Effective Law Enforcement

The trial court found: (1) the witnesses were promised

confidentiality; (2) that confidentiality encourages complaints; (3) that investigation of these complaints would be impaired if disclosure ultimately ensued because potential witnesses, including officers, would be reluctant to come forward; and (4) the morale of the agencies would suffer a serious negative impact which would include harassment of the officers and their families. These findings are unchallenged.

Inasmuch as the newspapers' request for the names of the complainants and other witnesses has been withdrawn, we need not discuss their disclosure. Likewise, the right to privacy argument has been discussed earlier herein. The sole issue is whether nondisclosure of the officers' names in sustained reports is essential to effective law enforcement.

█ First, disclosure of officers' names in reports will not disrupt the internal affairs investigatory process. A report is "sustained" only after the investigation is concluded and the officer's action found to constitute misconduct. In most cases, because of the nature of the incident, the affected officer knows the name of the party filing the complaint (including other officers) and any witnesses. Hence, when those people are contacted, they are aware that because of the incident, their identity will be known to the affected officer. Even if their identity initially is kept confidential, if the officer seeks to challenge any sanction imposed, a public hearing will be held in which they will be required to come forth and testify. Moreover, since no disclosure of complainants or witnesses is sought here, it is difficult to see how the investigative process will be interrupted.

The agencies also assert the morale of their personnel will suffer if the names of the officers are disclosed. The trial court so found; the testimony supports that finding; it is a fact. Moreover, this court is cognizant of the "ripple effect" further disclosure may have upon the officers' families and fellow officers as a natural consequence of this disclosure. However, the courts are charged by statute to liberally allow public scrutiny of records even though inconvenience or embarrassment may occur. The public in

adopting this initiative is presumed to be cognizant of that provision and unless the exemptions apply, the courts must give credence to it. It would be our fervent hope that such a result might be an incentive for members of the particular agency involved to see that this type of conduct does not occur.

Finally, the agencies assert that fellow officers will be less likely to report misconduct if their names are disclosed or if the incident is disclosed, *i.e.,* a code of silence will prevail. Although this may be true in some instances, uncontested testimony also revealed that many times the affected officer already knows the identity of the complainants and other witnesses. This has not stopped fellow officers from reporting misconduct in the past.[4]

We conclude that the findings do not support the trial court's conclusions that the exemptions apply; the agencies have failed in their burden of showing the names are not disclosable under the act.

## V
### THE GENERAL PRIVACY EXEMPTION

Since the filing of this appeal, our Supreme Court in *In re Rosier, supra,* construed the act as possessing a general privacy exemption. There, refining the *Hearst* test, the court stated "an individual has a privacy interest whenever information which reveals unique facts about those named is linked to an identifiable individual." *In re Rosier, supra* at 613. If those "unique facts" are highly offensive, the privacy interest must then be balanced against the public interest. *In re Rosier, supra* at 613. However, the court acknowledged the basic purpose and policy of RCW 42.17

---

[4]New York apparently has a special statute exempting disclosure of police personnel records which are used to evaluate performance toward continued employment or promotion. *See Gannett Co. v. James,* 108 Misc. 2d 862, 438 N.Y.S.2d 901 (1981). Maine has a statute which exempts records that would be within the scope of a privilege against discovery or use as evidence in civil or criminal trials. *See Moffett v. Portland,* 400 A.2d 340 (Me. 1979). *See also Hafermehl v. UW,* 29 Wn. App. 366, 628 P.2d 846 (1981) (interpreting RCW 42.17-.310(1)(i)).

was "to allow public scrutiny of *government, rather than* to promote scrutiny of *particular individuals* who are *unrelated* to *any governmental operation.*" (Italics ours.) *In re Rosier, supra* at 611.

Here, the information sought involves public employees directly related to a governmental operation, *i.e.,* law enforcement. Although the unedited records may reveal unique facts identifying the officers specifically, these records relate to their performance of their public duties.

Thus, we conclude the general privacy exemption is inapplicable and the officers do not have a protectable personal privacy interest in the records unless specifically provided by exemption. Having found no such specific exemption, we conclude there is no protectable privacy interest with respect to these officers' names.

The trial court's order is reversed; the three agencies are directed to meet the requirements of the request and disclose the names of the officers.

GREEN, C.J., and McINTURFF, J., concur.

Review granted by Supreme Court October 28, 1986.