[No. 20145-3-II. Division Two. February 20, 1998.]

TACOMA PUBLIC LIBRARY, *Respondent*, v. CAROLYN WOESSNER, *Appellant*.

ported a finding that the transactions involved at least some funds derived from theft.

206

*David R. Minikel*, for appellant.
*Jeffrey A. James* and *Tamsen L. Leachman* of *Sebris, Busto, P.S.*, for respondent.
*William E. Holt*, amicus curiae.

HUNT, J. — Carolyn Woessner sought copies of two personnel reports from Tacoma Public Library (the Library) under Washington's public disclosure act, RCW 42.17. The reports contain the names and identification numbers of Library employees, as well as salary, sick and vacation leave hours, and a summary of benefits. The Library provided Woessner with redacted reports, from which employee names and numbers were deleted. Woessner again requested unredacted reports. The Library denied the request, asserting that the reports were exempt from disclosure because they contained private employee information. The Library then filed a motion requesting determination of its disclosure obligations under the act. The trial court ruled that the unredacted reports were exempt. Woessner appeals, claiming the unredacted reports

are not exempt from disclosure.[1] Both parties seek attorney fees. We reverse in part and affirm in part.

## FACTS

Carolyn Woessner is an employee of the Tacoma Public Library and the union representative for her fellow non-management Library employees. In February 1995, Woessner, in her individual capacity, asked the Library to disclose certain records under Washington's public disclosure act (PDA), RCW 42.17. The requested records contain information on employees' rates of pay and amounts of regular, vacation and leave hours, benefits, and employer contributions to employee pensions.[2] The information is organized by employee name and identification number. Woessner contends that this information is necessary to regulate government spending, to ensure equitable distribution of pay and benefits between management and labor, and to monitor overpayments and nepotism.

Once the requested reports were available, the Library provided them to Woessner with employee names and numbers deleted, or "redacted." In July 1995, Woessner, in her union capacity, again requested the reports with the employee names and numbers included.

In response to Woessner's request, the Library conducted a survey of its employees, asking if they would find such disclosure offensive. The majority of employees responding to the survey indicated they did not want the information disclosed. Based on this response and the Library's belief that the names and numbers were exempt from disclosure, the Library did not provide Woessner with unredacted reports. The Library then informed Woessner and the union that if they did not withdraw their requests, it would

---

[1]Woessner also assigns error to the trial court's denial of her motion to reconsider. But she provides no argument or citations to authority in support of this asserted error. Accordingly, we do not address the issue. *See Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991) (If a party fails to support assignments of error with legal arguments, they will not be considered on appeal).

[2]Woessner did not ask for records of employees' voluntary deductions.

seek declaratory judgment for a determination of its obligations to provide the redacted information.

In September 1995, Woessner informed the Library that she intended to pursue her request for the unredacted reports, although she was able to obtain identical unredacted reports through the City of Tacoma.[3]

On September 13, 1995, the Library filed a complaint for declaratory judgment pursuant to RCW 7.24,[4] seeking an order to protect the records under RCW 42.17.330[5] and arguing that the redacted information is exempt from disclosure under the "personal information" exception to the PDA, RCW 42.17.310(1)(b). The claim was initially filed against the union and Woessner, in both her individual and her union capacities. The union withdrew its request for the reports and was removed from the proceedings. The claim was also dismissed against Woessner in her capacity as union representative. Thus, the case proceeded against only Woessner in her individual capacity.

The trial court heard oral argument and considered affidavits and other documentary evidence submitted by the parties. The court determined that the Library employees had a substantial privacy interest in the information contained in the unredacted reports, and that Library operations could be adversely affected by disclosure. The court determined that the unredacted reports were exempt from disclosure and granted the Library's motion for an order of protection against disclosure.

## ANALYSIS

As recently explained by the Washington Supreme

---

[3]Woessner requested the unredacted reports directly from the City of Tacoma, and the City provided them after payment of a copying fee.

[4]The Uniform Declaratory Judgments Act, RCW 7.24.

[5]RCW 42.17.330 reads, in part,

[t]he examination of any specific public record may be enjoined if, upon motion and affidavit by an agency . . . the superior court for the county in which the movant resides or in which the record is maintained, finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.

Court in *Newman v. King County*, 133 Wn.2d 565, 947 P.2d 712 (1997),

> The PDA reflects the belief that the public should have full access to information concerning the working of the government. *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997). The purpose of the PDA is to ensure the sovereignty of the people and the accountability of the governmental agencies that serve them. RCW 41.17.251.
>
> . . . [T]he PDA is a "strongly worded mandate for broad disclosure of public records." *Amren*, 131 Wn.2d at 31 . . . (quoting *Progressive Animal Welfare Soc'y v. University of Washington*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994)); *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 33, 769 P.2d 283 (1989). . . . The PDA is to be liberally construed to promote full access to public records, and its exemptions are to be narrowly construed. *Amren*, 131 Wn.2d at 31 . . .; [*PAWS*], 125 Wn.2d at 251. . .; RCW 41.17.251.

*Newman*, 133 Wn.2d at 570-71 (footnote omitted). "[F]ree and open examination of public records is in the public interest. . . ." RCW 42.17.340(3).

■ The public records portion of the PDA, RCW 42.17.250-.348, requires all state and local agencies to disclose any public record upon request, unless the record falls within certain specific exemptions. RCW 42.17.260(1).[6] The agency bears the burden of proving that its refusal to disclose "is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." RCW 42.17.340(1); *Dawson v. Daly*, 120 Wn.2d 782, 789, 845 P.2d 995 (1993). Further, agencies "shall not distinguish among persons requesting records. . ." nor require "such persons . . . to provide information as to the purpose for the request . . . ." RCW 42.17.270.

---

[6]RCW 42.17.260(1) reads:

Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of subsection (6) of this section, RCW 42.17.310, 42.17.315, or other statute which exempts or prohibits disclosure of specific information or records.

Subsection (6) exempts provision of lists of individuals for commercial purposes.

RCW 42.17.310(1) provides the following pertinent personal and other exemptions:

(b) Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy.

. . . .

(d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

. . . .

(l) Any library record, the primary purpose of which is to maintain control of library materials, or to gain access to information, which discloses or could be used to disclose the identity of a library user.

. . . .

(t) All applications for public employment, including the names of applicants, resumes, and other related materials submitted with respect to an applicant.

(u) The residential addresses and residential telephone numbers of employees or volunteers of a public agency which are held by the agency in personnel records, employment or volunteer rosters, or mailing lists of employees or volunteers.

. . . .

(dd) Information that identifies a person who, while an agency employee: (i) Seeks advice, under an informal process established by the employing agency, in order to ascertain his or her rights in connection with a possible unfair practice under chapter 49.60 RCW against the person; and (ii) requests his or her identity or any identifying information not be disclosed.

(ee) Investigative records compiled by an employing agency conducting a current investigation of a possible unfair practice under chapter 49.60 RCW or of a possible violation of other federal, state, or local laws prohibiting discrimination in employment

. . . .

(ii) Personal information in files maintained in a data base created under RCW 43.07.360.

Nonetheless, subsection (2) provides: "[T]he exemptions of this section are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought." RCW 42.17.310(2).

## A. Available from Other Source

The Library first argues that because Woessner was able to obtain the same unredacted reports from another source before filing this appeal, the issue is moot.[7] But, whether the reports are available from another source does not affect our analysis under the PDA.

■■ In *Limstrom v. Ladenburg*, 85 Wn. App. 524, 933 P.2d 1055, *review granted*, 133 Wn.2d 1001, 943 P.2d 662 (1997), the Pierce County Prosecutor's Office denied a request for records in part "because these documents would be available at less cost to the state through the clerk's office or other agencies . . . ." *Limstrom*, 85 Wn. App. at 532. We determined that:

> [t]here is no reasonableness requirement in the public disclosure act. The only exemptions to the disclosure requirement are those specifically included in the statute, and "the Public Records Act contains no general exemptions." . . . Therefore, the disclosure request could not be denied based only on the fact that they are available through other public agencies.

*Limstrom*, 85 Wn. App. at 532 (quoting *Progressive Animal Welfare Soc'y v. University of Wash.*, 125 Wn.2d 243, 258, 884 P.2d 592 (1994) (*PAWS*)). Similarly, the PDA does not exempt records that a requester has already received from another source. *See also Hearst Corp. v. Hoppe*, 90 Wn.2d

---

[7]Conversely, for the same reason Woessner argues the unredacted reports are not private.

123, 132, 580 P.2d 246 (1978) ("The fact that the material may be available in other records is not a reason stated in the act for failure to disclose."). Accordingly, Woessner's claim is not moot.[8]

## B. Standard of Review

■ " '[J]udicial review of all agency actions taken or challenged under [the statute] shall be de novo.' RCW 42.17.340(3) . . . . [T]he appellate court stands in the same position as the trial court where the record consists only of affidavits, memoranda of law, and other documentary evidence"; thus, a reviewing court is not bound by the trial court's findings. *PAWS*, 125 Wn.2d at 252 (citation omitted). Here, the trial court did not hear testimonial evidence and based its decision solely on documentary evidence. Accordingly, we review de novo.

## C. Exemptions

"Once documents are determined to be within the scope of the PDA, disclosure is required unless a specific statutory exemption is applicable." *Newman*, 133 Wn.2d at 571 (citing *Dawson*, 120 Wn.2d at 789; RCW 42.17.260(1)). "Statutory exemptions are narrowly construed because the PDA requires disclosure, and the agency claiming the exemption bears the burden of proving that the documents requested are within the scope of the claimed exemption." *Newman*, 133 Wn.2d at 571 (citing *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 793, 791 P.2d 526 (1990)).

The Library asserts that the unredacted reports are exempt from disclosure under the "personal information" exemption, which states: "Personal information in files maintained for employees . . . of any public agency to the extent that disclosure would violate their right to privacy"

---

[8]Federal cases interpreting the Federal Freedom of Information Act, 5 U.S.C. § 552 (1966), are in accord. *See Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dept. of Air Force*, 26 F.3d 1479, 1484 (9th Cir. 1994) (fact that a requester can get the same information from another source is irrelevant, as Exemption 6 is meant to address an individual's interest in controlling the dissemination of personal information).

shall be exempt from public inspection and copying. RCW 42.17.310(1)(b). "The right to privacy is, in turn, violated 'only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public.' " *PAWS*, 125 Wn.2d at 254 (quoting RCW 42.17.255).

Additionally, RCW 42.17.310(1)(u) specifically exempts from public disclosure "[t]he residential addresses and residential telephone numbers of employees . . . of a public agency . . . ." Employee names are not exempt. Further, subsection (2) provides for disclosure of information otherwise exempt under the statute if portions "which would violate personal privacy . . . can be deleted from the specific records sought." " 'In general, the Public Records Act does not allow withholding of records in their entirety. Instead, agencies must parse individual records and must withhold only those portions which come under a specific exemption. Portions of records which do not come under a specific exemption must be disclosed.' " *Newman*, 133 Wn.2d at 574 (quoting *PAWS*, 125 Wn.2d at 261).

Woessner contends the unredacted reports do not fall within the "personal information" exemption because (1) they are not files maintained for employees, and (2) disclosure would not violate the employees' right to privacy. Because redacted reports with salary and benefits information were provided to Woessner, the issue here is whether coupling such information with individual employee names and identification numbers is exempt.

### 1. Files Maintained for Employees

RCW 42.17.310(1)(b) exempts "[p]ersonal information in files maintained for employees." Woessner argues that the files are not "maintained for employees" because the records sought were "prepared by the City of Tacoma" and were "not prepared for employees, nor does the report get placed in an employee's personnel file." But Woessner's reading of the exemption is too narrow.

RCW 42.17.310(1)(b) does not specify, as argued by Woessner, that the exempted information actually come

from an employee's individual personnel file. Rather, the statute exempts information "in files maintained for employees." RCW 42.17.310(1)(b). Whether the file is specifically labeled as an employee's individual personnel file is not the focus. Rather, the focus is whether the requested file contains personal information that is normally maintained for the benefit of employees, disclosure of which would "violate their right to privacy."

For example, in *PAWS*, the organization sought disclosure of an unfunded grant proposal from the University of Washington. *PAWS*, 125 Wn.2d at 247. The University refused to disclose the proposal, citing several exemptions, including RCW 42.17.310(1)(b). On appeal, the court determined the grant proposal did not fall under this exemption because "nothing resembling protected 'personal information' appears in the unfunded grant proposal." *PAWS*, 125 Wn.2d at 254. The court did not reject this exemption on grounds that it was not an employee personnel file. Instead, the court focused on the type of information contained in the grant proposal. *PAWS*, 125 Wn.2d at 254.

In *Cowles Publ'g Co. v. State Patrol*, 44 Wn. App. 882, 724 P.2d 379 (1986), *rev'd on other grounds*, 109 Wn.2d 712, 748 P.2d 597 (1988), Division Three also focused on the content of the requested record, not its format or where it was stored. There, appellant sought release of all internal investigation records pertaining to citizens' complaints against police officers. *Cowles*, 44 Wn. App. at 884. The State Patrol rejected the request, citing RCW 42.17.310(1)(b). On appeal, the court discussed the exemption and the meaning of "maintained for employees," noting that the "provision was intended to shield only that highly personal information often contained in *employment and other personnel files*." *Cowles*, 44 Wn. App. at 891 (emphasis added). The court determined that the records sought by appellant were not exempt because they were kept separate from files that contained personal information and did not themselves contain such personal information. *Cowles*, 44 Wn. App. at 891-92.

In contrast, the records requested here contain employ-

ment information normally contained in an employee's personnel file. Accordingly, we reject Woessner's argument that these files are not maintained for employees and thus not within the terms of RCW 42.17.310(1)(b).

## 2. Right to Privacy: "Highly Offensive" and "Not of Legitimate Public Concern"

■■ Although the public has a right to know the tax-supported salaries, fringe benefits, and numbers of hours worked by named employees, the public has no need to know private information such as employee nonpublic job evaluations, charitable contributions, private addresses and phone numbers, which the Library claims would be accessible via the employee numbers by simply logging onto a City of Tacoma computer.

### a. *"Highly Offensive"*

For the requested information to be exempt from disclosure, the Library must first show that disclosure would be "highly offensive" to a reasonable person. RCW 42.17.255. Woessner argues that disclosure of an individual employee's name and identification number, coupled with that employee's salary and benefits information, would not be highly offensive. This is an issue of first impression in the State of Washington.

■■ ■■ " '[A]n individual has a privacy interest whenever information which reveals unique facts about those named is linked to an identifiable individual.' " *Cowles*, 44 Wn. App. at 897 (quoting *In re Rosier*, 105 Wn.2d 606, 613, 717 P.2d 1353 (1986)). "[T]he basic purpose and policy of RCW 42.17 was 'to allow public scrutiny of *government, rather than* to promote scrutiny of *particular individuals* who are *unrelated* to *any governmental operation.*' " *Cowles*, 44 Wn. App. at 897-98 (quoting *Rosier*, 105 Wn.2d at 611) (alteration in original).

"[T]he right of privacy applies 'only to the intimate details of one's personal and private life' . . . .[T]he employee privacy definition protects personal information that

the employee would not normally share with strangers." *Dawson*, 120 Wn.2d at 796 (quoting *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 38, 769 P.2d 283 (1989)) (citing *Cowles*, 44 Wn. App. at 890-91).

In *Cowles*, the court discussed what sort of information the "personal" exception was intended to protect:

> Such information might include, *but is not limited to*, the particular employee's union dues, charitable contributions, deferred compensation, medical records, disabilities, employment performance evaluations, and reasons for leaving employment. Likewise, the phrase may include those sensitive records relating to health, or marital and family information necessary for calculating health plans, job benefits, and taxes.

*Cowles*, 44 Wn. App. at 891 (citation omitted) (emphasis added).

Washington cases addressing the "personal information" exemption have determined that, among other things, disclosure of employee evaluations would be "highly offensive," but disclosure of specific instances of misconduct or public, on-duty job performance was not "highly offensive." *See Dawson*, 120 Wn.2d at 797; *Cowles*, 44 Wn. App. at 893; *Ollie v. Highland Sch. Dist. No. 203*, 50 Wn. App. 639, 645, 749 P.2d 757 (1988). In *Seattle Firefighters Union Local No. 27 v. Hollister*, 48 Wn. App. 129, 136, 737 P.2d 1302 (1987), Division One determined that medical records in firefighters' disability retirement records should be disclosed because none of the medical conditions in the records were disgraceful or humiliating.

In another Washington case, *Human Rights Comm'n v. City of Seattle*, 25 Wn. App. 364, 607 P.2d 332 (1980) *(HRC)*, Division One addressed whether applications for positions with the City of Seattle contained certain private information of applicants that could be deleted from the records. The court was not addressing the personal information exception, but its determination of what may be private is still informative. It determined that answers to questions such as why the applicant left his or her last job, the applicant's salary, and questions about education, military service, criminal convictions, and disabilities, were personal

information. *HRC*, 25 Wn. App. at 369-70. "It cannot be disputed by any reasonable person that the public disclosure of material contained in answers to the above questions would or could be highly offensive to the . . . applicants." *HRC*, 25 Wn. App. at 370.

Washington courts often look to federal court interpretations of similar provisions of the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1966), for guidance in interpreting Washington's public disclosure act. *See Dawson*, 120 Wn.2d at 791 ("Cases interpreting FOIA are relevant when we are interpreting our state act."). Exemption 6 of FOIA protects "personnel files . . . the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[9] Several federal cases have addressed whether employees have a privacy interest in the disclosure of identifying information coupled with financial information.

It is clear from these federal cases that Exemption 6 prevents disclosure of employee job classification, salary and benefits information, *coupled with the employee's name and address*. For example, in *Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dep't of Air Force*, 26 F.3d 1479 (9th Cir. 1994), the court stated that "[t]he requesters seek to procure not only a name and address list of workers, but a list that connects those names to precise information about each worker's occupational classification, wages, and wage deductions. It cannot be disputed that this information is normally considered private." *Painting Indus.*, 26 F.3d at 1483. The court based its decision in part on the fact that such information, if made available to the requester in that case, would then be available to anyone, including mass-marketers and commercial organizations. The court determined that use of the information by these operations would be an "invasion of the workers' right to be let alone." *Painting Indus.*, 26 F.3d at 1483.

---

[9]Woessner argues that federal FOIA cases should not be consulted in interpreting this exemption because the FOIA allows a balancing of privacy interests against the public interest in disclosure, whereas the Washington act forbids a balancing of these factors. *See Dawson*, 120 Wn.2d at 798. Nonetheless, the federal cases are instructive on the issue of whether certain information is private.

Similarly, in *Painting & Drywall Work Preservation Fund, Inc. v. Department of Hous. & Urban Dev.*, 936 F.2d 1300 (D.C. Cir. 1991), the court held that employee names, addresses, and wage, hour, and deduction information was personal and exempt from disclosure under FOIA. The court found that, if this information was released to the particular requester,

> the workers would experience a significant diminution in their expectations of privacy because that same information would also have to be provided, for example, to creditors, salesmen, and union organizers. The dissemination of this sort of information about private citizens "is not what the framers of the FOIA had in mind." We conclude, therefore, that disclosure of the requested data would constitute a substantial invasion of privacy.

*Preservation Fund*, 936 F.2d at 1303 (citation omitted).

Another case, *Hopkins v. Department of Hous. & Urban Dev.*, 929 F.2d 81 (2nd Cir. 1991), similarly determined that payroll records, which contained employee names, addresses, and wage information, were exempt from disclosure because of the employees' substantial privacy interest against dissemination of that information.

Washington cases have already recognized that a public employee's social security number, residential address, and telephone number are exempt from disclosure: "[T]he disclosure of a public employee's [s]ocial [s]ecurity number would be highly offensive to a reasonable person and not of legitimate concern to the public. Also, residential addresses and telephone numbers of employees of public agencies are independently exempt from disclosure under RCW 42.17.310(1)(u)." *PAWS*, 125 Wn.2d at 254. Here, Woessner does not seek such information.

■■ ■■ But the Library argues that that disclosure of an employee's name coupled with his or her identification number would provide access to other exempt personal information, such as the social security number, home address, and telephone number. We agree that release of employees' identification numbers would be highly offensive, because disclosure could lead to public scrutiny of individu-

als concerning information unrelated to any governmental operation and impermissible invasions of privacy as contemplated in *Painting Indus., Preservation Fund,* and *Hopkins*. But release of employee names would not be similarly offensive or lead to such invasions of privacy; rather disclosure of employee names would "allow public scrutiny of *government." Cowles,* 44 Wn. App. at 898 (quoting *Rosier,* 105 Wn.2d at 611) (alteration in original). As argued by Woessner, the public could then ensure that the government is not paying one employee twice, funneling money to nonexistent employees, or engaging in nepotism.

Accordingly, we hold that release of employee names, salaries, publicly funded fringe benefits, and vacation and sick leave pay is not "highly offensive,"[10] but only if not coupled with employee identification numbers, release of which would be "highly offensive."

### b. *"Legitimate Public Concern"*

Next, the Library must show that the public has no legitimate concern requiring the release of identifying information. Except for the redacted identification numbers, the Library has not met that burden. Woessner argues that the public interest involved is the public's need to "ensure that benefits are equitabl[y] distributed between management and labor." The Library argues that disclosure of this information could lead to lowered employee morale.

---

[10]*But see Sheet Metal Workers Local 9 v. United States Air Force,* 63 F.3d 994, 997-98 (10th Cir. 1995), the Tenth Circuit determined that names alone are sufficiently identifying to constitute a violation of employee privacy interests. There, a district court ordered the Air Force to release certified payroll records, with each employee's address, social security number, withholdings, and net wages redacted. *Sheet Metal Workers,* 63 F.3d at 996. The Air Force was ordered to turn over employee names with their corresponding general payroll information. The Air Force appealed, arguing disclosure of employee names with the remaining payroll information should also be exempt. *Sheet Metal Workers,* 63 F.3d at 996.

The Tenth Circuit agreed, stating that: "the redaction of addresses alone, leaving names on the payroll records and thereby directly linking detailed financial information about workers . . . does not materially lessen the substantial privacy interest involved." *Sheet Metal Workers,* 63 F.3d at 998. The court noted that prior decisions had held that release of names *and addresses,* coupled with financial information, was an invasion of privacy. But the court further stated that "we see no principled distinction between names alone as personal identifiers, or names and addresses." *Sheet Metal Workers,* 63 F.3d at 998.

To be "legitimate," the public interest must be "reasonable." *Dawson*, 120 Wn.2d at 798. Some balancing of the public interest in disclosure against the public interest in efficient administration of government is appropriate. *Dawson*, 120 Wn.2d at 798. The purpose of the PDA is to keep the public informed so it can control and monitor the government's functioning. *See* RCW 42.17.251. This policy can be achieved by disclosing payroll and benefits reports, with employee names included, and with the employee identification numbers redacted.

Generally, records of government agency expenditures for employee salaries, including vacation and sick leave, and taxpayer-funded benefits are of legitimate public interest and therefore not exempt from disclosure. "Certainly, there exists a reasonable concern by the public that government conduct itself fairly and use public funds responsibly." *Yakima Newspapers, Inc. v. City of Yakima*, 77 Wn. App. 319, 328, 890 P.2d 544 (1995) (finding that terms of a retirement agreement between the City of Yakima and the city's fire chief is of public concern, and would not have chilling effect on future settlement agreements). We find it also of legitimate public concern to identify such information with employees' names, but not with identification numbers.

We note that several federal cases have held disclosure of identified employees' address, wage, and benefits information unwarranted because the public's interest did not meet FOIA's central purpose—"to open agency action to the light of public scrutiny." *Department of Air Force v. Rose*, 425 U.S. 352, 372, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976). For example, in *Sheet Metal Workers, Hopkins, Preservation Fund,* and *Painting Indus.*, the circuit courts determined that the public's interest in monitoring the government's enforcement of various wage regulations was minimal and did not outweigh the employees' privacy interests. *Sheet Metal Workers*, 63 F.3d at 998; *Hopkins*, 929 F.2d at 88; *Preservation Fund*, 936 F.2d at 1303; and *Painting Indus.*, 26 F.3d at 1486.

Federal cases balance an employee's privacy interest against the public's interest in receiving the informa-

tion to determine if particular records fall under Exemption 6 of FOIA. Under Washington's PDA, such balancing is not allowed; both a privacy interest and a lack of legitimate public interest must be present to establish an exemption from public disclosures. *Dawson,* 120 Wn.2d at 798.

### D. Deletion of Private Information

In general, the PDA does not allow an agency to withhold exempt records in their entirety. Rather, agencies must withhold only those portions of individual records which come under a specific exemption and disclose the rest. *PAWS,* 125 Wn.2d at 261 (citing RCW 42.17.310(2)). RCW 42.17.260(1) also authorizes removal of private information in accordance with the exemptions of RCW 42.17.310. Here, the Library removed the information it believed would have been highly offensive to individual employees if disclosed and released the remaining information.

Records of employee salaries and benefits generally are not exempt, and the Library does not argue that they are. But certain identifying information, coupled with individual employee salary and benefits information, is private; its disclosure would be highly offensive. Thus, the Library properly redacted employee identification numbers from the report it released, but it should not have redacted the employee names.

### E. Attorney Fees

Woessner requests attorney fees and expenses under RCW 42.17.340(4), which provides for such an award to "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record . . . ." The Library requests attorney fees and expenses under RAP 14, which authorizes an appellate court to award costs "to the party that substantially prevails on review . . . ." RAP 14.2.

██ ██ Under RCW 42.17.340(4), any person who prevails in an action to compel agency disclosure must be awarded attorney fees, regardless of the good faith on the part of the agency withholding the information. Such good

faith is relevant only for purposes of determining whether additional penalties should be assessed. A party who wins disclosure of some, but not all, information sought, is nonetheless deemed the "prevailing party" for purposes of awarding attorney fees and costs under the statute. *Progressive Animal Welfare Soc'y v. University of Wash.*, 114 Wn.2d 677, 684, 790 P.2d 604 (1990). Such an award must be related to that portion of attorney fees and costs involved in successfully compelling disclosure of information, not for denied disclosure of the remaining information. *Dawson v. Daly*, 120 Wn.2d 782, 800, 845 P.2d 995 (1993); and *Limstrom v. Ladenburg*, 136 Wn.2d 595, 616, 963 P.2d 869 (1998).

Accordingly, we grant Woessner attorney fees and costs on appeal under RAP 14.2, to be determined by the commissioner and prorated according to that portion of effort expended on achieving disclosure of the employee names only. With respect to effort expended on her unsuccessful attempt to compel disclosure of employee numbers, we deny Woessner's request for attorney fees and costs on appeal.[11]

## CONCLUSION

Affirmed in part and reversed in part.

BRIDGEWATER, A.C.J., and ARMSTRONG, J., concur.

Reconsideration denied June 10, 1998.

Petition for review granted and case remanded to the Court of Appeals at 136 Wn.2d 1030 (1998).

[11]We reject the Library's request for attorney fees and cost on appeal with respect to the issue on which it prevailed because the Library did not cross-petition for review on this issue to the Supreme Court, and thus, the Supreme Court's order on remand does not encompass this issue.