13 P.3d 1104 (2000)
Gina TIBERINO, Appellant,
v.
SPOKANE COUNTY, Office of the Prosecuting Attorney; Cowles Publishing Company; and Spokane Television, Inc., Respondents.
Nos. 18830-2-III, 18870-1-III.
Court of Appeals of Washington, Division 3, Panel Six.
December 14, 2000.
*1106 Mary E. Schultz, Spokane, for Appellant.
James P. Emacio, Deputy Prosecutor, Spokane, for Spokane County.
Laurel H. Siddoway, Randall & Danskin, Spokane, for Spokane Television, Inc.
*1105 KURTZ, C.J.
Gina Tiberino's employment as a secretary for the Spokane County Prosecutor's Office was terminated based on her unsatisfactory work performance, including her use of e-mail for personal matters. Ms. Tiberino threatened the County with a lawsuit. In response, the County printed all e-mails Ms. Tiberino sent or received from her work computer. The County subsequently received public records requests from Cowles Publishing Company and Spokane Television, Inc., for the e-mails. The court denied Ms. Tiberino an injunction preventing release of the e-mails. Ms. Tiberino appeals contending: (1) the court erred by finding Ms. Tiberino's e-mails were public records, (2) the court erred by finding the e-mails were not exempt from disclosure as personal information, (3) disclosure of the e-mails constituted a violation of Ms. Tiberino's right to privacy, and (4) Ms. Tiberino is entitled to her attorney fees. We agree with the superior court that the e-mails are "public records" that come within the scope of the public records act (the Act). But we further conclude that the e-mails were exempt from disclosure as personal information. For that reason, we reverse the order of the superior court.

FACTS
On August 26, 1998, Gina Tiberino was hired as a secretary in the Prosecuting Attorney's Office and assigned to the Special Assault Unit. Spokane County provided Ms. Tiberino with a personal computer equipped with electronic communications applications (e-mail). As part of her employee orientation, Ms. Tiberino attended a program that advised employees about their use of electronic communications. Employees were told that (i) Spokane County Information Systems Department had the capability of monitoring all e-mail; (ii) not to put anything on e-mail that they would not want on the front page of the newspaper, and (iii) County equipment was not for personal use. These admonitions were consistent with e-mail policies formally adopted by both the County and the Prosecutor.
In the early part of October 1998, the Prosecutor's Office Administrator, Travis Jones, received complaints from Ms. Tiberino's co-workers that she was using her computer to send personal e-mail via the Internet. One co-worker indicated that excessive amounts of personal e-mail were being sent by Ms. Tiberino and that the e-mail contained coarse and vulgar language. On October 13, 1998, Mr. Jones observed that when Ms. Tiberino left for the day, she failed to turn off her computer. As a result of the complaints from her co-workers, he viewed her "sent" mail folder.
Mr. Jones did not read the contents of all Ms. Tiberino's e-mail, but only randomly selected e-mail messages to determine whether or not they were work-related or of a personal nature. The "sent" mail folder revealed that approximately 214 e-mail messages had been sent. Of those messages, 200 were sent via the Internet to Ms. Tiberino's sister or mother. Approximately 10 to 15 appeared to be work-related. Mr. Jones recommended to Ms. Tiberino's supervisor that she be given an Event Report reminding her that County computers were not to be used for personal business and informing her that the volume of her personal e-mail strongly suggested that she was compromising her job responsibilities.
On November 10, 1998, Ms. Tiberino was discharged for unsatisfactory work performance. At the time of her discharge, Ms. Tiberino was told that she had alienated co-workers *1107 with her preoccupation with personal issues. Specifically, she was told that her co-workers resented performing her assigned job responsibilities while she was spending her time using the e-mail for nonbusiness purposes.
Approximately one month before Ms. Tiberino was discharged, she had advised her supervisor that over the prior weekend, she had been raped. Five weeks later, she was discharged from her position with the Special Assault Unit due to her preoccupation with personal issues.
On December 1, 1998, Ms. Tiberino's attorney sent a letter to the Prosecutor's Office claiming that Ms. Tiberino had been unlawfully discharged and demanding reinstatement. The letter threatened litigation. Ms. Tiberino ultimately filed a complaint with the Washington State Human Rights Commission.
As a result of Ms. Tiberino's threatened litigation, the Prosecutor's Office printed all e-mails in Ms. Tiberino's "sent" mail folder. The "sent" mail folder now contained 551 sent items. Of those, 467 were personal messages sent to a total of five addresses. Each of the 467 messages were time-stamped over a 40 working-day time frame between September 18, 1998, and November 10, 1998.
On December 16, 1998, a reporter for Cowles Publishing Company made a public record request to the Prosecutor's Office requesting release and copies of all e-mail correspondence received and generated by Ms. Tiberino. Thereafter, the Prosecutor's Office advised Ms. Tiberino's attorney that the 3,805 paginated/printed e-mails, with 147 pages redacted in whole or in part, would be made available to the newspaper. However, Ms. Tiberino was afforded sufficient time under RCW 42.17.330 to obtain injunctive relief to prohibit the release of her e-mails.
At Ms. Tiberino's request, the superior court issued a temporary restraining order preventing the Prosecutor from releasing her e-mail. The Cowles Publishing Company intervened in the litigation but later filed pleadings requesting that it be dismissed from the lawsuit. Spokane Television, Inc., subsequently intervened. Following oral argument and an in camera review performed at the request of the Prosecutor, the superior court held that Ms. Tiberino's e-mail communications were public records under RCW 42.17.020(36) and, except for the 147 redacted pages, were subject to disclosure to Spokane Television.
Ms. Tiberino's motion for reconsideration was denied. Ms. Tiberino filed a second motion for reconsideration and filed an appeal to the Washington Supreme Court. When the second motion for reconsideration was denied, Ms. Tiberino filed this appeal and moved for voluntary withdrawal of the Supreme Court appeal and transfer of the case to this court. The Supreme Court appeal was consolidated with this case.

ANALYSIS
Did the court err by concluding that Ms. Tiberino's e-mails were public records?
Because this case presents a question of law that was decided by the trial court solely on the basis of documentary evidence and legal arguments, review is de novo. Amren v. City of Kalama, 131 Wash.2d 25, 32, 929 P.2d 389 (1997); Spokane Police Guild v. Liquor Control Bd., 112 Wash.2d 30, 35-36, 769 P.2d 283 (1989). The party seeking to prevent disclosurein this case Ms. Tiberino  bears the burden of proof. Spokane Police Guild, 112 Wash.2d at 35, 769 P.2d 283. In reviewing an agency's action with regard to a public disclosure request, we must consider the public records act's policy that "free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment[.]" RCW 42.17.340(3). To fulfill the statutory purpose, courts are to liberally construe the Act's disclosure provisions and narrowly construe its exemptions. Limstrom v. Ladenburg, 136 Wash.2d 595, 604, 963 P.2d 869 (1998) (citing RCW 42.17.251); Progressive Animal Welfare Soc'y (PAWS) v. University of Washington, 125 Wash.2d 243, 251, 884 P.2d 592 (1994).
Generally, the Act requires disclosure of public records by governmental entities upon request unless exempted. Amren, 131 Wash.2d at 31, 929 P.2d 389.
*1108 A "public record," subject to disclosure under the Act
includes [1] any writing [2] containing information relating to the conduct of government or the performance of any governmental or proprietary function [3] prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

Confederated Tribes v. Johnson, 135 Wash.2d 734, 746, 958 P.2d 260 (1998) (quoting RCW 42.17.020(36)).
Ms. Tiberino does not dispute that the e-mail records are writings and that they are prepared, owned, used or retained by a state agency. She contends that the e-mails are not "public records" because the second element of the definition of public record is not met. She argues that the e-mails do not contain any information relating to the conduct of governmental or proprietary function.
In answering the threshold inquiry whether a document is a public record, the courts have broadly interpreted this second element of the statutory definition of public record. For example, in Dawson v. Daly, 120 Wash.2d 782, 789, 845 P.2d 995 (1993), the court held that documents compiled by a prosecutor for use in cross-examining a defense expert in child sexual abuse cases were documents relating to the performance of prosecutorial functions, were used by the prosecutor's office in carrying out those governmental functions and, therefore, were public records. In Servais v. Port of Bellingham, 127 Wash.2d 820, 828, 904 P.2d 1124 (1995), the court concluded that research dataa cash flow analysis prepared by a consulting firm for the purposes of planning by the Portwas a writing which related to the conduct and performance of a governmental function and, thus, was a public record. In Oliver v. Harborview Medical Center, 94 Wash.2d 559, 566, 618 P.2d 76, 26 A.L.R.4th 692 (1980), the court held that medical records of a patient treated at a public hospital were public records. The court reasoned that the records contained information of a public nature, "i.e., administration of health care services, facility availability, use and care, methods of diagnosis, analysis, treatment and costs, all of which... relate to the performance of a governmental or proprietary function." Id. In Yakima Newspapers, Inc. v. City of Yakima, 77 Wash.App. 319, 324, 890 P.2d 544 (1995), the court held that a settlement agreement containing information about the City's termination of an employee was a public record because termination is a proprietary function. See also Limstrom v. Ladenburg, 85 Wash.App. 524, 529, 933 P.2d 1055 (1997), rev'd, 136 Wash.2d 595, 963 P.2d 869 (1998) (criminal investigation files held by prosecutor and prosecutor's personnel files were public records).
Ms. Tiberino's excessive personal use of e-mail was a reason for her discharge. The County printed the e-mails in preparation for litigation over her termination, a proprietary function. Consequently, they contain information relating to the conduct of a governmental or proprietary function. The second element is met and the e-mails are "public records" within the scope of the public records act.
Did the court err by concluding that the e-mails were not exempt from disclosure as personal information?
"Once documents are determined to be within the scope of the [Act], disclosure is required unless a specific statutory exemption is applicable." Newman v. King County, 133 Wash.2d 565, 571, 947 P.2d 712 (1997) (citing Dawson, 120 Wash.2d at 789, 845 P.2d 995;RCW 42.17.260(1)). Ms. Tiberino contends that even if her e-mails are public records, they are exempt from disclosure under RCW 42.17.310(1)(b).
RCW 42.17.310(1)(b) exempts from disclosure:
Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy.
A person's right to privacy is violated "only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.17.255. Under these provisions, the use of a test that balances the *1109 individual's privacy interests against the interest of the public in disclosure is not permitted. Brouillet v. Cowles Publ'g Co., 114 Wash.2d 788, 798, 791 P.2d 526 (1990). Even if the disclosure of the information would be offensive to the employee, it shall be disclosed if there is a legitimate or reasonable public interest in its disclosure. Dawson, 120 Wash.2d at 797-98, 845 P.2d 995.
Highly Offensive.
"[T]he right of privacy applies `only to the intimate details of one's personal and private life[.]'" Dawson, 120 Wash.2d at 796, 845 P.2d 995 (quoting Spokane Police Guild, 112 Wash.2d at 38, 769 P.2d 283). Dawson cites with approval Cowles Publ'g Co. v. State Patrol, 44 Wash.App. 882, 724 P.2d 379 (1986), rev'd on other grounds by, 109 Wash.2d 712, 748 P.2d 597 (1988), which held disclosure of complaints filed against law enforcement officers in the performance of their public duties, although may be embarrassing, is not highly offensive. Dawson, 120 Wash.2d at 795-96, 845 P.2d 995. In Dawson, the court discussed whether the disclosure of the performance evaluation would be highly offensive to a reasonable person as follows: "[e]mployee evaluations qualify as personal information that bears on the competence of the subject employees." Id. at 797, 845 P.2d 995. Therefore, "disclosure of performance evaluations, which do not discuss specific instances of misconduct, is presumed to be highly offensive within the meaning of RCW 42.17.255." Dawson, 120 Wash.2d at 797, 845 P.2d 995.
Ms. Tiberino argues that the purely personal nature of her e-mails to her mother, sister and friends makes it clear that public disclosure would be highly offensive to any reasonable person. Ms. Tiberino's e-mails contain intimate details about her personal and private life and do not discuss specific instances of misconduct. "`[A]n individual has a privacy interest whenever information which reveals unique facts about those named is linked to an identifiable individual.'" Cowles, 44 Wash.App. at 897, 724 P.2d 379 (quoting In re Rosier, 105 Wash.2d 606, 613, 717 P.2d 1353 (1986)). "[T]he basic purpose and policy of RCW 42.17 was `to allow public scrutiny of government, rather than to promote scrutiny of particular individuals who are unrelated to any governmental operation.'" Cowles, 44 Wash.App. at 897-98, 724 P.2d 379 (quoting Rosier, 105 Wash.2d at 611, 717 P.2d 1353). Any reasonable person would find disclosure of Ms. Tiberino's e-mails to be highly offensive.
Legitimate Public Concern.
For the e-mails to be exempt from disclosure, Ms. Tiberino must also show that the public has no legitimate concern requiring release of the e-mails. Ms. Tiberino contends that the disclosure of private e-mails could decrease the efficiency and morale of government employees. The County argues that the County employees were on notice that the computers should not be used for personal business, so the disclosure of their e-mail would not affect the efficient administration of government.
To be "legitimate," the public interest must be "reasonable." Dawson, 120 Wash.2d at 798, 845 P.2d 995. Some balancing of the public interest in disclosure against the public interest in efficient administration of government is appropriate. Id. The purpose of the Act is to keep the public informed so it can control and monitor the government's functioning. See RCW 42.17.251.
Generally, records of governmental agency expenditures for employee salaries, including vacation and sick leave, and taxpayer-funded benefits are of legitimate public interest and therefore not exempt from disclosure. "Certainly, there exists a reasonable concern by the public that government conduct itself fairly and use public funds responsibly." Yakima Newspapers, 77 Wash.App. at 328, 890 P.2d 544 (finding that terms of a retirement agreement between the City of Yakima and the City's fire chief is of public concern and would not have chilling effect on future settlement agreements).
In Spokane Research & Defense Fund v. City of Spokane, 99 Wash.App. 452, 457, 994 P.2d 267 (2000), this court found there was a legitimate public interest in disclosure of the city manager's performance evaluation. This court reasoned that the city manager is a *1110 public figure and the city council used the information in the evaluation in making its determination to retain him. Thus, the public had a legitimate interest in the evaluation.
However, these cases differ from Ms. Tiberino's in that in Spokane Research and Yakima Newspapers, the actual content of the disclosed information was of public interest. The content of Ms. Tiberino's e-mails is personal and is unrelated to governmental operations. Certainly, the public has an interest in seeing that public employees are not spending their time on the public payroll pursuing personal interests. But it is the amount of time spent on personal matters, not the content of personal e-mails or phone calls or conversations, that is of public interest. The fact that Ms. Tiberino sent 467 e-mails over a 40 working-day time frame is of significance in her termination action and the public has a legitimate interest in having that information. But what she said in those e-mails is of no public significance. The public has no legitimate concern requiring release of the e-mails and they should be exempt from disclosure.
Is Ms. Tiberino entitled to attorney fees?
Ms. Tiberino contends she is entitled to an award of attorney fees because the County acted in bad faith by accessing and printing her private e-mails. She also contends she is entitled to attorney fees under the private attorney general exception because she should not be required to alone bear the expense of litigating these important public policy issues.
The public records act provides that a person who prevails in an action to inspect a public record "shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." RCW 42.17.340(4). The courts have interpreted this section to be inapplicable to a case in which an individualrather than the agency opposes disclosure of the records, and where the action was brought to prevent, rather than compel, disclosure. Confederated Tribes v. Johnson, 135 Wash.2d 734, 757, 958 P.2d 260 (1998); Yakima Newspapers, Inc. v. City of Yakima, 77 Wash.App. 319, 329, 890 P.2d 544 (1995). This interpretation is consistent with the purpose of the attorney fees provision, which is to encourage broad disclosure and to deter agencies from improperly denying access to public records. Lindberg v. Kitsap County, 133 Wash.2d 729, 746, 948 P.2d 805 (1997).
This provision does not authorize an award of attorney fees in an action brought by a private party, pursuant to RCW 42.17.330 to prevent disclosure of public records held by an agency where the agency has agreed to release the records but is prevented from doing so by court order.
Confederated Tribes, 135 Wash.2d at 757, 958 P.2d 260. Even if Ms. Tiberino prevails against the County by obtaining an injunction pursuant to RCW 42.17.330, she is not entitled to attorney fees.
Ms. Tiberino has also failed to show she is entitled to attorney fees pursuant to equitable principles. There is no showing that the County acted in "bad faith" by trying to comply with the newspaper's request for copies of the e-mail that the County printed as proof of Ms. Tiberino's excessive attention to personal matters. Ms. Tiberino also has not shown that she is entitled to attorney fees on the equitable grounds of "private attorney general" actions.
"[T]his doctrine provides that a private attorney general may be awarded attorney fees whenever the successful litigant (1) incurs considerable economic expense, (2) to effectuate an important legislative policy, (3) which benefits a large class of people."

Miotke v. City of Spokane, 101 Wash.2d 307, 340, 678 P.2d 803 (1984) (quoting Pub. Util. Dist. No. 1 v. Kottsick, 86 Wash.2d 388, 392, 545 P.2d 1 (1976)). Ms. Tiberino has not shown that she effectuated an important legislative policy to benefit a large class of people. Ms. Tiberino should not be awarded her attorney fees.
Reversed.
SCHULTHEIS, J., and SWEENEY, J., concur.