Upon the Petition of BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ARAPAHOE, Colorado, Petitioner–Appellee,

and Concerning Tracy Baker, Clerk and Recorder, Arapahoe County, and Leesa Sale, Assistant Deputy Clerk, Respondents–Appellants,

and

Denver Publishing Company, d/b/a Rocky Mountain News, a Colorado Corporation, Intervenor–Appellee.

No. 03CA0074.

Colorado Court of Appeals, Div. V.

July 17, 2003.

As Modified on Denial of Rehearing Oct. 23, 2003.

Certiorari Granted July 26, 2004.

Kathryn L. Schroeder, County Attorney, George Rosenberg, Assistant County Attorney, Ronald A. Carl, Assistant County Attorney, Littleton, Colorado, for Petitioner–Appellee.

Law Firm of Leonard M. Chesler, William P. Buckley, Denver, Colorado, for Respondent–Appellant Tracy Baker.

Robert E. Goodwin & Associates, Robert E. Goodwin, Denver, Colorado, for Respondent–Appellant Leesa Sale.

Baker & Hostetler, LLP, Marc D. Flink, Denver, Colorado, for Intervenor–Appellee.

Opinion by Judge TAUBMAN.

Respondents, Tracy Baker and Leesa Sale, appeal the judgment of the trial court requiring the release of 622 of their e-mails, including 570 sexually explicit or romantic e-mails, under the Colorado Open Records Act (CORA), § 24–72–101, et seq., C.R.S.2002. We reverse in part, vacate in part, and remand for further proceedings.

The facts underlying this controversy are undisputed. Arapahoe County is a political subdivision of the State of Colorado. Baker is the county's elected clerk and recorder, and Sale is the clerk and recorder's assistant chief deputy. Baker directly supervises Sale.

In 2002, the clerk and recorder's former chief deputy made allegations against Baker of constructive discharge, sexual harassment-hostile work environment, violations of open meetings laws, violations of the Campaign Practices Act, and misuse of county-owned property and funds. In response, petitioner, the Board of County Commissioners of Arapahoe County, hired private investigator Rick Johnson to review these allegations, and he prepared a detailed report (Johnson Report).

The Johnson Report consists of a main report, attachments, and subreports, including a subreport entitled "Sexual Harassment/Hostile Work Environment Report." Additionally, the Johnson Report includes the contents of 570 sexually explicit and romantic e-mails that Baker and Sale sent to one another.

The board released a redacted version of the Johnson Report in October 2002. The board then received written requests for inspection of public records from various media, including print and television. The requests for inspection asked for release of either the e-mails that were redacted from the publicly released report or the entire unredacted Johnson Report.

The board filed a petition for a judicial determination whether disclosure of the Johnson Report was prohibited under CORA. The Rocky Mountain News intervened in this action, seeking disclosure of the e-mails and the Johnson Report. After a hearing, the trial court ordered the release and public disclosure of the entire Johnson Report. The trial court's order was stayed pending appeal.

On appeal, Baker and Sale challenge the trial court's ruling relating to the e-mails and the "Sexual Harassment/Hostile Work Environment Report."

## I. Electronic Messages as Public Records under CORA

Baker and Sale contend that the trial court erred in ordering the disclosure of their e-mail messages because they are not "public records" within the meaning of CORA. Rather, they maintain that the e-mails are private, personal, and confidential communications whose disclosure is prohibited by statute. We agree in part.

Baker and Sale do not challenge the underlying findings of fact by the trial court. Rather, they challenge the trial court's legal conclusions, which we review de novo. *Golden Lodge No. 13 v. Grand Lodge,* 80 P.3d 857, 2003 WL 1089639 (Colo.App. No. 02CA0128, Mar. 13, 2003); *see also Hartman v. Regents of Univ. of Colo.,* 22 P.3d 524, 529 (Colo.App.2000), *aff'd sub nom. Middleton v. Hartman,* 45 P.3d 721 (Colo.2002).

When construing statutes, a court's primary purpose is to ascertain and give effect to the intent of the General Assembly. To determine intent, courts first look to the plain language of the statute and interpret statutory terms in light of their commonly accepted meanings. "If the words used are plain and unambiguous, our task is accomplished by giving effect to their commonly accepted meanings." *Bodelson v. City of Littleton,* 36 P.3d 214, 216 (Colo.App.2001).

### A. Public Records

Under CORA, Colorado's public policy is "that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law." Section 24–72–201, C.R.S.2002; *see also* § 24–72–203(1)(a), C.R.S.2002. However, the custodian of any public records may not allow the right of inspection to be exercised when such inspection would be contrary to state statute, federal statute, or regulation or would be prohibited by supreme court rules or by the order of any court. Section 24–72–204(1), C.R.S.2002. Further, CORA details many types of public records that are not subject to disclosure, including certain medical and mental health records and trade secrets. *See* § 24–72–204(3)(a), C.R.S.2002.

Here, Baker and Sale do not dispute that the e-mails are public records because CORA's definition of "writings" expressly includes them. *See* § 24–72–202(6)(a)(I), (7), C.R.S.2002. It is also undisputed that the county maintains the records.

### B. Official Correspondence Exception

Baker and Sale contend, however, that the e-mails are not subject to public disclosure because they fall within the official correspondence exception under CORA. We disagree.

Subject to limited exceptions, there is a presumption in favor of disclosure of public records under CORA. *See* § 24–72–203(1)(a), C.R.S.2002; *see also Int'l Bhd. Of Elec. Workers v. Denver Metro. Major League Baseball Stadium Dist.,* 880 P.2d 160, 165 (Colo.App.1994).

Section 24–72–202(6)(a) provides in pertinent part:

(II) "Public records" includes the correspondence of elected officials, except to the extent that such correspondence is:

. . .

(B) Without a demonstrable connection to the exercise of functions required or authorized by law or administrative rule *and* does not involve the receipt or expenditure of public funds. . . .

(Emphasis added.) *See also* J.G. Colvin, II, *E-mail, Open Meetings and Public Records,* 25 Colo. Law. 99 (Oct.1996) (discussing, inter alia, 1996 amendments to CORA).

This exception to the correspondence provision contains two parts. Thus, to fall within the exception and not be subject to disclosure, the e-mails must lack a demonstrable connection to the exercise of functions required or authorized by law and not involve the expenditure of public funds. *See* § 24–72–202(6)(a)(II)(B), C.R.S.2002.

We need not address whether the e-mails have a demonstrable connection to the exercise of functions required or authorized by law because we conclude, for the reasons indicated below, that the e-mails involve the expenditure of public funds, and thus, are

public records subject to disclosure under CORA.

First, Baker, an elected county official, and Sale, a county employee, are compensated by public funds. Baker and Sale sent many of the e-mails while they were working. An employee's use of work time involves the expenditure of public funds.

Second, the e-mails were sent on the "Metrocall" e-mail system purchased by the county for use by county employees. The county pays monthly fees to use this system. The use of this system to send sexually explicit e-mails or e-mails unrelated to county business is relevant to allegations that Baker misspent public funds, including improperly promoting and compensating Sale.

Third, Baker and Sale used county-owned computers to send e-mails to county-owned pagers over the Internet. The county expends public funds for the purchase, maintenance, and use of this equipment.

Finally, although the county's e-mail and Internet policy contemplates some occasional use of e-mails for personal purposes, the volume of e-mails here exceeds any such occasional use.

### C. Records of Sexual Harassment Exception

■ Baker and Sale also contend that the subreport entitled "Sexual Harassment/Hostile Work Environment" and the e-mails relating to the employee who filed a hostile work environment complaint should not be disclosed under a CORA provision concerning records of sexual harassment. We agree in part.

■ ■ An appellate court may affirm a judgment based on reasons different from those relied on by the trial court. *Barham v. Scalia*, 928 P.2d 1381, 1387 (Colo.App.1996).

Section 24–72–204(3)(a)(X)(A), C.R.S.2002, exempts from disclosure "any records of sexual harassment complaints and investigations." However, an exception to this prohibition allows the disclosure of the result of an investigation of general employment policies and practices of an agency, to the extent disclosure can be made without disclosing the

identity of the individuals involved. Section 24–72–204(3)(a)(X)(A).

Here, the trial court concluded that the record of sexual harassment exception does not apply to the "Sexual Harassment/Hostile Work Environment" subreport. The trial court characterized the subreport as concerning the former chief deputy clerk's hostile work environment claim and primarily describing observations of Baker and Sale by various county employees. The trial court determined that this subreport was not a true sexual harassment report as contemplated by the statutory exemption. However, the trial court determined that this subreport was so intertwined with the rest of the Johnson Report that it, too, should be released.

■ Contrary to the trial court's analysis, a hostile work environment is a type of sexual harassment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

Here, the plain language of the statute prohibits disclosure of the "Sexual Harassment/Hostile Work Environment" subreport as well as any e-mails, both in the Johnson Report and in its attachments, referring to the employee who filed the hostile work environment complaint against Baker. *See* § 24–72–204(3)(a)(X)(A).

■ In contrast, we conclude that disclosure of the e-mails not related to county business and the other parts of the Johnson report was not prohibited by the sexual harassment exception to CORA. The Johnson Report was a general investigation of county employment policies because of allegations made against Baker. The investigation concerned reports of other employees being demoted, forced to resign, or intimidated into taking action in support of Baker. The Johnson Report also related to specific allegations against Baker by the former chief deputy clerk concerning constructive discharge, violations of open meetings laws, violations of the Campaign Practices Act, and misuse of county-owned property and funds.

The disclosure of e-mails not related to county business can be made without reveal-

ing the identities of other employees, as required by § 24–72–204(3)(a)(X)(A), for example, by redacting the names and initials of any individuals involved, except Baker and Sale. Because the public already is aware that sexually explicit e-mails were sent between Baker and Sale, limiting the disclosure of their identities would serve no practical purpose.

Therefore, we conclude the trial court erred in ordering the release of the "Sexual Harassment/Hostile Work Environment" subreport and e-mails naming the employee involved.

To determine whether the e-mails not related to county business should be disclosed, we must consider the contentions of Baker and Sale regarding their constitutional right to privacy.

## II. Constitutional Right to Privacy

Baker and Sale contend that the trial court erred in ordering disclosure of their e-mail messages and rejecting their claim that such disclosure violates their constitutional right to privacy. We agree in part.

### A. Availability of Privacy Exception Under CORA

■ Initially, we reject the board's contention that we should affirm the trial court's ruling because there is no privacy exception under CORA.

The board maintains that unlike the federal Freedom of Information Act, 5 U.S.C. § 552 (2003), and open records acts of some other states, CORA does not contain a general exemption based on the right of privacy. The board thus asserts that because CORA specifies certain classes of public records that may not be disclosed because they are considered to be private, Baker and Sale may not raise a claim based upon their constitutional right to privacy. We disagree.

■ The board itself acknowledges that divisions of this court have considered the application of right to privacy claims in CORA cases. *See Freedom Newspapers, Inc. v. Tollefson,* 961 P.2d 1150 (Colo.App. 1998); *Denver Post Corp. v. Univ. of Colo.,* 739 P.2d 874 (Colo.App.1987). However, the board contends that those cases are distinguishable because they concerned the "public interest" exemption under CORA. *See* § 24–72–204(6)(a). However, this is a distinction without a difference. A party may raise an argument based upon the constitutional right to privacy regardless of which section of CORA is at issue. *Cf. CF & I Steel, L.P. v. Air Pollution Control Div.,* —— P.3d ——, 2003 WL 21026764 (Colo.App. No. 02CA0715, May 8, 2003)(steel company may seek to enjoin state agency from disclosing public records it alleges are not subject to disclosure under CORA confidential records exception).

Additionally, when CORA was amended in 1996 to encompass e-mail communications, the uncodified legislative declaration to the amendment acknowledged privacy concerns. It stated in part, "Electronic mail shares some features with telephonic communication, which generally is not stored in any form and is generally regarded as private," and "[t]his act is intended to balance the privacy interests and practical limitations of public officials and employees with the public policy interests in access to government information." Colo. Sess. Laws 1996, ch. 271, § 1 at 1479.

Accordingly, we reject the board's contention that CORA has no privacy exception and therefore that Baker and Sale may not raise their constitutional privacy claims.

### B. *Martinelli* Three–Prong Privacy Test

In *Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (1980), the supreme court recognized that part of the constitutional right to privacy known as the "right to confidentiality." *See also* T.B. Kelley & C.P. Beal, *Developments in the Law of Privacy in Colorado,* 31 Colo. Law. 9 (Mar.2002) (discussing Colorado appellate decisions concerning the right to privacy in tort context). This right encompasses the "power to control what we shall reveal about our intimate selves, to whom, and for what purpose," but the court noted that it is not absolute. Rather, the court established a three-part balancing inquiry applicable to this aspect of the

constitutional right to privacy. Those three prongs were stated as follows:

> (1) does the party seeking to come within the protection of the right to confidentiality have a legitimate expectation that the materials or information will not be disclosed?
>
> (2) is disclosure nonetheless required to serve a compelling state interest?
>
> (3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

*Martinelli v. Dist. Court, supra,* 199 Colo. at 174, 612 P.2d at 1091; *see also, Nixon v. Admr. of Gen. Servs.,* 433 U.S. 425, 465, 97 S.Ct. 2777, 2801, 53 L.Ed.2d 867 (1977)(public officials have legitimate expectation of privacy in their personal communications, but right to privacy must be weighed against government's interest in disclosing the information).

We apply a de novo standard of review to the constitutional privacy claims of Baker and Sale. *See Adkins v. Bd. of Educ.,* 982 F.2d 952 (6th Cir.1993); *cf. Lewis v. Colo. Rockies Baseball Club, Ltd.,* 941 P.2d 266 (Colo.1997)(de novo standard of review applies when determining First Amendment status of government property; this is a mixed question of fact and law requiring independent review of the record).

Here, in applying the *Martinelli* test, the trial court concluded that Baker and Sale had no legitimate expectation that the e-mails at issue would not be disclosed and that disclosure was required to serve a compelling state interest. The trial court then ordered disclosure of the full contents of all the e-mails without applying the third prong of the *Martinelli* test.

We agree in part with the trial court's analysis with respect to the first two prongs of that test, but we conclude that the case must be remanded for, inter alia, application of the third prong.

### 1. Legitimate Expectation of Privacy

▮▮ Baker and Sale contend they had a legitimate expectation of privacy because, although they recognized that the contents of their e-mails could be disclosed to the county, they had no basis to believe that the e-mails would be disseminated to the public. They further assert that the e-mails "simply do not contain the kind of governmental information that [CORA] was designed to make available to the public." They also maintain that they had a legitimate expectation of privacy because they deleted some of the e-mails and the county had to retain the services of a computer expert to recover the text of their e-mail communications. Finally, Baker and Sale contend that all except 101 of the e-mails contain sexually explicit or passionate messages, and they are entitled to a greater expectation of privacy with respect to the contents of those e-mails. We agree in part.

▮▮ Before discussing the applicability of *Martinelli,* we note that the county does not contend that Baker and Sale waived their right to privacy. Although the question of whether they waived their right to privacy may be related to whether Baker and Sale had a legitimate expectation of privacy, the waiver inquiry is complex, requiring consideration of factors such as (1) whether the purported waiver was knowing, intelligent, and voluntary, (2) whether it was express or implied, and (3) the scope of any waiver. *See Veilleux v. Nat'l Broad. Co.,* 8 F.Supp.2d 23 (D.Me.1998)(although it is possible for the right of privacy to be waived or lost by a course of conduct, any such waiver must be knowing and voluntary); *Jaillett v. Ga. Television Co.,* 238 Ga.App. 885, 520 S.E.2d 721 (1999)(although right of privacy may be waived, the effect of the waiver may not bring before the public those matters of a purely private nature that express law or public policy demands shall be kept private); *Pohle v. Cheatham,* 724 N.E.2d 655 (Ind.Ct.App.2000)(any waiver of an individual's right to privacy justifies an invasion only to the extent warranted by the circumstances that brought about the waiver). Accordingly, we do not address whether a party may waive his or her constitutional right to privacy by signing an e-mail disclosure policy.

▮▮ Under *Martinelli,* there are two factors to consider when determining whether a person has a legitimate expectation of nondisclosure. One factor is the person's expec-

tation of nondisclosure, and the other is the nature of the information sought to be disclosed. *Martinelli v. Dist. Court, supra,* 199 Colo. at 174, 612 P.2d at 1091.

Discussing the first prong of the balancing test, the *Martinelli* court concluded that "the claimant must show that the material or information which he or she seeks to protect against disclosure is 'highly personal and sensitive' and that its disclosure would be offensive and objectionable to a reasonable person of ordinary sensibilities." The *Martinelli* court explained that those materials deserving the highest constitutional interest concern the intimate relationship of the claimant with other persons. *See Robert C. Ozer, P.C. v. Borquez,* 940 P.2d 371, 377 (Colo.1997)("facts related to an individual's sexual relations ... are considered private in nature and the disclosure of such facts constitutes an invasion of the individual's right of privacy," citing Restatement (Second) of Torts § 652D cmt. b (1976)); *see also Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003)(sexual behavior is the most private human conduct). Material of this nature will be less likely to be subject to disclosure, especially when considered under the second and third prongs of the test.

In concluding that Baker and Sale did not have a reasonable expectation that their e-mails were not public records, the trial court did not address specifically how the nature of the information sought to be disclosed affected the expectations of nondisclosure of Baker and Sale.

The trial court made extensive findings relating to whether Baker and Sale had an "an actual or subjective expectation that the information ... not be disclosed." *See Martinelli v. Dist. Court, supra.* The trial court found that, pursuant to CORA, the county is required to have an e-mail policy, that such policy must state that e-mails may be public records, that the county had such a policy, and that Baker and Sale signed statements acknowledging the existence of the policy.

Specifically, the trial court found that the county's e-mail policy included provisions that: (1) e-mail is to be used for business purposes; (2) all e-mail messages are the property of Arapahoe County and are there-

fore not private; (3) the county reserves the right to monitor, review, and delete any e-mail correspondence; (4) all e-mail users should be aware that, as with any electronic messaging, e-mail is not secure; (5) e-mail should never be used for confidential information; and (6) "all mail that travels over the Internet should be considered completely public and should never contain unprotected sensitive information."

The court further found that both Baker and Sale signed acknowledgments recognizing that the county's e-mail systems were to be used only for conducting county business and also, "that Arapahoe County reserves and will exercise the right to review, audit, intercept, delete, access, and *disclose* all matters on the county's e-mail systems at any time" (emphasis added).

The trial court also found that the county's Internet policy was applicable, particularly its provisions that those using the county-provided Internet access "should not assume they have any degree of anonymity," and that the Internet access was not to be used for personal communications.

Based on these findings, the trial court concluded:

> Baker and Sale were on notice that any person, at any time, could request copies of their e-mail and other correspondence, and that such records might have to be disclosed. As such, Baker and Sale could not realistically have had any confidence that their e-mails would not be public records, and could not have had a legitimate expectation that they would never be disclosed.

We agree with the trial court's conclusion that Baker and Sale were on notice that their e-mails might have to be disclosed. That conclusion is supported by decisions of other courts in similar circumstances. *See, e.g., United States v. Angevine,* 281 F.3d 1130 (10th Cir.2002)(no expectation of privacy where computer was provided only for work-related purposes and employer reserved ownership of data); *United States v. Simons,* 206 F.3d 392 (4th Cir.2000)(where employer had policy to inspect and monitor Internet activity, employee had no expectation of privacy in files transferred from Internet);

*Garrity v. John Hancock Mut. Life Ins. Co.*, No. CIV.A. 00–12143–RWZ, 2002 WL 974676, at *2, 146 Lab. Cas. (CCH) ¶ 59,541, 18 Individual Emp. Rights Cas. (BNA) 981 (D.Mass. May 7, 2002)(no reasonable expectation of privacy in e-mail messages transmitted over the Internet that are at some point accessible by a third party); S.J. Dawes & S.E. Dallas, *Privacy Issues in the Workplace for Public Employees–Part II*, 26 Colo. Law. 85, 85 (May 1997)("As a general rule, an employee has no reasonable expectation of privacy in e-mail messages sent and received at work...."); S. DiLuzio, *Workplace E-mail: It's Not as Private as You Might Think*, 25 Del. J. Corp. L. 741 (2000)(employees generally have no expectation of privacy in their workplace e-mail); *but see People ex rel. Tooley v. Seven Thirty–Five East Colfax, Inc.*, 697 P.2d 348, 369 (Colo.1985)(constitutional right to privacy protects against unjustified governmental interference); S.A. Sundstrom, *You've Got Mail! (and the Government Knows It): Applying the Fourth Amendment to Workplace E-mail Monitoring*, 73 N.Y.U. L.Rev.2064 (Dec.1998)(arguing that the Fourth Amendment should limit the government's ability to monitor e-mails of government employees).

■ However, we disagree with the trial court that Baker and Sale were on notice that any person at any time could request and receive copies of their e-mail communications. The trial court did not consider whether the e-mails at issue concerned highly personal and sensitive information whose disclosure would be offensive and objectionable to a person of ordinary sensibilities, as required by *Martinelli*. Here, it is undisputed that the sexually explicit e-mails concern such information, but approximately 100 e-mail communications which are not sexually explicit would arguably not be entitled to the same degree of protection from disclosure.

Further, several other factors support the contention of Baker and Sale that they had at least a limited expectation of privacy in the e-mails they exchanged. First, the e-mail policy provided that "messages not deleted by users will be automatically purged after 90 calendar days ... with no further possibility of retrieval." Second, here, the county had to employ a computer expert using specialized computer software to retrieve deleted e-mails. Third, the policy recognizes that "some occasional use of e-mail for personal reasons is anticipated." Finally, the policy states that notwithstanding the county's right to retrieve e-mails, they should be treated as confidential by other employees and accessed only by the intended recipient.

Accordingly, we conclude that even though Baker and Sale did not have a reasonable expectation that their e-mails would not be disclosed at all, they still had a reasonable expectation under CORA that there would be more limited disclosure of at least their sexually explicit e-mails.

### 2. Compelling State Interest

Baker and Sale next argue that disclosure of the contents of their e-mails does not serve any compelling state interest, because the e-mails do not relate to the functioning of government and because they concern highly personal and sensitive information. We agree in part.

The trial court listed twelve reasons that disclosure of all the e-mails was of compelling interest to the public. First, they were sent by Baker to Sale to each other while they were working on county-owned equipment and through county-supplied services. Also, the e-mails were relevant to: (1) the reason Baker promoted Sale to the position of assistant chief deputy; (2) the reason Baker gave Sale substantial salary increases and overtime pay; (3) public allegations of hostile work environment; (4) public allegations of misuse of county funds by Baker and Sale; (5) allegations that Baker and Sale violated county Internet and e-mail policies; (6) the reason that Sale has not been terminated despite public allegations that she embezzled money from a former employer and she may have been less than honest on her employment application; (7) whether the public should support efforts to recall Baker from office; (8) the need for a publicly funded investigation by the board into Baker's actions; (9) whether Baker is a liability risk to the county; (10) allegations that Baker and Sale were having an affair and to the question of when the affair began; and (11)

whether Baker has been dishonest about the affair, which relates to his honesty and fitness for office.

 In our view, there must be a close nexus between the particular asserted compelling interest to the public and the information sought to be disclosed. *See Martinelli v. Dist. Court, supra,* 199 Colo. at 175, 612 P.2d at 1092 (when compelling state interest mandates disclosure of otherwise protected materials or information, trial court nevertheless must ensure that disclosure occurs in a manner consistent with the state interest to be served, which will intrude least on the claimant's right to confidentiality). Thus, for example, we must inquire whether disclosure of the e-mails would further a compelling state interest because they are relevant to allegations that Baker and Sale violated county Internet and e-mail policies (reason 5). Because it is conceded that these e-mails concern either romantic or sexually explicit matters, it follows that they were violative of the county Internet and e-mail policies. However, this conclusion may be reached regardless of whether the contents of the e-mails are disclosed to the public. Thus, no compelling state interest would be achieved by disclosure of the contents of the e-mails on this basis.

Similarly, with respect to the asserted interest in whether the public should support efforts to recall Baker from office (reason 7), it is not clear that releasing the contents of the e-mails would make that case more persuasive than it might otherwise be after disclosure of the nature and volume of the e-mails. The same analysis applies to the first stated reason and numbered reasons 3, 4, and 8 through 11.

In this regard, our analysis is supported by *Tiberino v. Spokane County,* 103 Wash. App. 680, 13 P.3d 1104 (2000), upon which Baker and Sale rely. There, the court considered whether disclosure of 467 e-mails containing personal messages was appropriate under Washington's version of CORA. Although the *Tiberino* court concluded that the e-mails were public records under the state statute, it applied a statutory exemption that prohibited disclosure based upon a right to privacy. That statutory right to privacy, similar to the right to privacy at issue here, would be violated only if disclosure of information about a person would be highly offensive to a reasonable person and not of legitimate concern to the public. In concluding that the content of those e-mails should not be disclosed, the *Tiberino* court stated:

> The content of Ms. Tiberino's e-mails is personal and is unrelated to governmental operations. Certainly, the public has an interest in seeing that public employees are not spending their time on the public payroll pursuing personal interests. But it is the amount of time spent on personal matters, not the content of personal e-mails or phone calls or conversations, that is of public interest. The fact that Ms. Tiberino sent 467 e-mails over a 40 working-day time frame is of significance in her termination action and the public has a legitimate interest in having that information. But what she said in those e-mails is of no public significance. The public has no legitimate concern requiring release of the e-mails and they should be exempt from disclosure.

*Tiberino v. Spokane County, supra,* 103 Wash.App. at 691, 13 P.3d at 1110.

 In three respects, however, we conclude that disclosure of certain e-mails, in some form, may serve a compelling state interest. Such disclosure may help explain why Baker promoted Sale to her current position, why she received substantial increases in salary as well as overtime pay, and why she has not been terminated despite allegations she embezzled money (reasons 1, 2, and 6).

Except with respect to these three categories noted above, disclosure of the contents of the e-mails does not serve a compelling state interest, and the trial court erred in concluding otherwise.

### 3. Disclosure in Least Intrusive Manner

 Baker and Sale contend that the trial court erred in not applying the third prong of the *Martinelli* test and not considering whether any disclosure should be made in

the least intrusive manner possible. We agree.

Specifically, Baker and Sale urge that, under the third prong of the *Martinelli* test, no disclosure is appropriate. In contrast, the board argues that under the third prong, complete disclosure should result. The trial court must resolve this dispute on remand.

The trial court determined that Baker and Sale had no legitimate expectation of nondisclosure of their sexually explicit e-mails, regardless of their highly personal and sensitive nature. It also concluded that disclosure would serve a compelling state interest. For that reason, it undoubtedly concluded that it was unnecessary to apply the third prong of the *Martinelli* test.

Given our conclusions (a) that Baker and Sale had only a limited legitimate expectation of privacy, (b) that nevertheless, many of the e-mails are highly personal and sensitive, and (c) that there is a compelling state interest in three areas favoring disclosure of the e-mails, we further conclude that the case must be remanded to the trial court to apply the third prong of the *Martinelli* test, except as to those e-mails not disclosable under the sexual harassment exception discussed in part I(C) of this opinion and the 101 e-mails Baker and Sale effectively concede may be disclosed. Further, all other e-mails, or portions thereof, that concern work-related matters should be released, except to the extent they identify persons other than Baker and Sale involved in the sexual harassment claim. On remand, the trial court may consider whether the contents of other e-mails should only be disclosed in redacted or summary fashion.

The judgment of the trial court is affirmed to the extent it releases the 101 e-mails noted above and any other e-mails or portions thereof that concern work-related matters, except to the extent they identify persons other than Baker and Sale involved in the sexual harassment claim. The judgment is also affirmed as to ant e-mails relevant to Sale's promotion, salary, overtime, and potential grounds for termination.

The judgment of the trial court is reversed to the extent it releases: (1) the sexual harassment-hostile work environment subreport; (2) any e-mails concerning the allegations of the former chief deputy clerk and recorder relating to the sexual harassment/hostile work environment claim; (3) references in e-mails to the names of any employees involved in the sexual harassment-hostile work environment claim other than Baker and Sale; and (4) the contents of any e-mails not mentioned above, including the sexually explicit or romantic e-mails. In all other respects the judgment is vacated, and the case is remanded for application of the *Martinelli* test in a manner consistent with this opinion to determine whether and in what form the balance of the e-mails may be released or their contents disclosed.

Judge CASEBOLT and Judge NIETO concur.