# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| MILLENNIUM BULK TERMINALS LONGVIEW, LLC,<br><br>Appellant,<br><br>v.<br><br>WASHIGNTON STATE DEPARTMENT OF ECOLOGY,<br><br>Respondent. | No. 52270-5-II<br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Millennium Bulk Terminals-Longview (Millennium) sought to build a coal export terminal in Longview, which required an environmental impact statement (EIS). The Department of Ecology (DOE) and Cowlitz County served as co-lead agencies in the preparation of the EIS. After the EIS was published, Millennium requested public records from DOE under the Public Records Act (PRA). The request sought "data and assumptions" used to prepare the EIS. DOE responded to the request in installments.

After it had received a few installments, Millennium sued DOE, alleging PRA violations. After it received the final installment, Millennium filed a motion to show cause and argued that DOE failed to produce 26 documents and the "data and assumptions" that it had requested. The trial court denied Millennium's motion and dismissed its case.

Millennium argues that the documents it seeks are public records, DOE withheld responsive documents, and DOE's search was inadequate. Millennium also contends that it is entitled to attorney fees and per diem penalties.

We affirm.

FACTS

Millennium sought to build a coal export terminal in Longview. The proposed facility required the preparation of an EIS under the State Environmental Policy Act (SEPA). DOE and Cowlitz County agreed to serve as co-lead agencies in the preparation of the SEPA EIS, with the County serving as the nominal lead agency. WAC 197-11-944. The United States Army Corps of Engineers (the Corps) also joined as a co-lead agency because it planned to prepare an EIS under the National Environmental Policy Act (NEPA). The Corps was the sole lead agency in the preparation of the NEPA EIS.

DOE, the County, and the Corps then entered into a memorandum of understanding (MOU). The MOU identified a third-party contractor, ICF Jones & Stokes, Inc. (ICF), who would develop and prepare certain documents in both the federal and state EISs. Regarding the state EIS, as the nominal lead agency, the County had the "sole authority to enter into a professional services agreement with ICF." Clerk's Papers (CP) at 141.

The County then entered into a personal services agreement with ICF. The personal services agreement stated that ICF's work product, including "writings, programs, [and] data," was the "sole and absolute property of the County." CP at 172. The agreement also required that ICF create an administrative record.

In April 2017, DOE and the County released the final EIS for Millennium's proposed coal terminal. The EIS contained extensive analysis of the proposed coal terminal's greenhouse gas (GHG) emissions.

Millennium sent four public records requests to DOE, with one being made on July 7, 2017. Millennium's July 7 request, the main focus of this appeal, sought "[a]ny and all records . . .

obtained, retained, considered, and/or utilized by" DOE or ICF in the preparation of the Draft EIS or Final EIS regarding "[d]ata and assumptions" for five different subject matters related to GHG emissions. CP at 71-72.

DOE forwarded the request to ICF. Due to the terms of the personal services agreement, ICF's responses required the County's authorization. On August 10, the County informed DOE that it would no longer authorize ICF to work on DOE's public records requests.

In early August 2017, ICF sent DOE documents responding to Millennium's record request along with a memorandum explaining its responses. It appears that ICF believed it provided to DOE the "data and assumptions" that Millennium's request sought.

DOE then gave Millennium the documents that it had received from ICF, along with ICF's memorandum. The documents included the administrative record that ICF had compiled, as required under ICF's personal services agreement with the County.

On December 4, Millennium sued DOE under the PRA. Millennium alleged that DOE failed to provide reasonable time estimates for its four records requests and failed to respond in a reasonable amount of time. Millennium also alleged that DOE withheld responsive records.

In January 2018, DOE responded to Millennium's interrogatories. One interrogatory by Millennium asked whether DOE possessed "modeling data related to, used, or considered in the GHG calculations contained in the []EIS" and if so, "[w]hat more, if anything, needs to be done in order for the modeling data to be ready to be produced." CP at 387-88. DOE responded that ICF provided it "the modeling data related to the GHG calculations" in early August 2017 and that DOE had produced the documents to Millennium on August 7, 2017, and September 6, 2017. CP at 388.

On March 29, 2018, after nine installments, DOE concluded its production for Millennium's July 7 request. In responding to Millennium's four records requests, DOE spent approximately 795 hours and produced over 377,000 documents.

On May 11, Millennium filed a motion to show cause. Millennium's motion was supported by a declaration from Julie Carey, an energy economist, who identified specific missing documents. She stated that DOE's production related to Millennium's July 7 request did not contain 26 documents. Millennium clarified that its request, seeking "data and assumptions," included "System Summary Reports," which are "standard output files produced" by ICF. CP at 17. Millennium claimed that these "input files and output files" were required to validate the EIS's analysis. CP at 17. Carey also claimed that many documents DOE produced were incomplete because they had been hard coded.

In its response to Millennium's motion, DOE relied on a declaration from Sally Toteff, a regional director at DOE. Toteff detailed DOE's procedures for responding to Millennium's record requests, discussing how DOE conducted broad searches across multiple agency programs. Toteff stated that DOE forwarded Millennium's public records requests to ICF and then produced ICF's responses to Millennium.

After a hearing, the trial court found that DOE's production times were reasonable, DOE's searches were adequate, and DOE disclosed the documents that Millennium requested. Therefore, the court concluded that Millennium failed to establish its claims and dismissed its complaint. Millennium appeals.

ANALYSIS

Millennium argues that DOE failed to perform an adequate search. Relying on Carey's declaration, Millennium points to 26 responsive documents that DOE failed to produce and points to other documents that are not in their original form.

DOE argues that it performed a reasonable search because it conducted a thorough search of its internal files and servers, and it sent Millennium's request to ICF, ICF provided many documents in response as well as memoranda explaining those responses, and DOE produced ICF's responses and memoranda to Millennium. We agree with DOE.

"The PRA is a strongly-worded mandate for broad disclosure of public records." *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 535, 199 P.3d 393 (2009). Its purpose is to increase governmental transparency and accountability by making public records accessible to Washington's citizens. *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). The statute requires all state agencies to "make available for public inspection and copying all public records" that do not fall within a specific exemption. RCW 42.56.070(1). The PRA must be liberally construed and its exemptions narrowly construed to promote the public interest. RCW 42.56.030; *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007).

Upon the motion of any person having been denied an opportunity to inspect or copy a public record, the trial court may require the agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. RCW 42.56.550(1).

The PRA states that "[j]udicial review of all agency actions taken or challenged . . . shall be de novo." RCW 42.56.550(3). "When the record before the trial court consists entirely of 'documentary evidence, affidavits and memoranda of law,' this court stands in the same position as the trial court and reviews the trial court's decision de novo." *Morgan v. City of Federal Way*,

166 Wn.2d 747, 753, 213 P.3d 596 (2009) (quoting *Limstrom v. Ladenburg*, 136 Wn.2d 595, 612, 963 P.2d 869 (1998)).  The parties agree that we review de novo the trial court's decision here.

The threshold issue under the PRA is whether the requested documents are public records. *Tiberino v. Spokane County*, 103 Wn. App. 680, 687, 13 P.3d 1104 (2000).  "To be a public record under RCW 42.56.010(3), information must be (1) a writing (2) related to the conduct of government or the performance of government functions that is (3) prepared, owned, used, or retained by a state or local agency." *Nissen v. Pierce County*, 183 Wn.2d 863, 879, 357 P.3d 45 (2015).[1]

The test for adequacy of a search for public records under the PRA is the same as that under the federal Freedom of Information Act. *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 719, 261 P.3d 119 (2011).  "[T]he focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate." *Neigh. All.*, 172 Wn.2d at 719-20.  An agency's failure to disclose a responsive record does not violate the PRA if the agency's search was adequate. *Block v. City of Gold Bar*, 189 Wn. App. 262, 278, 355 P.3d 266 (2015); *see also Hobbs v. Wash. State Auditor's Office*, 183 Wn. App. 925, 945, 335 P.3d 1004 (2014) (concluding that the agency's failure to uncover particular documents did not render the agency's search inadequate).

"The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents." *Neigh. All.*, 172 Wn.2d at 720.

---

[1] DOE contends that the documents Millennium seeks are not public records and therefore are not subject to the PRA.  We need not decide this issue because, as discussed below, even if the documents were public records, DOE conducted an adequate search and thus did not violate the PRA.

"What will be considered reasonable will depend on the facts of each case." *Neigh. All.*, 172 Wn.2d at 720.

"[A]gencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered." *Neigh. All.*, 172 Wn.2d at 720. "The search should not be limited to one or more places if there are additional sources for the information requested." *Neigh. All.*, 172 Wn.2d at 720. "Th[at] is not to say, of course, that an agency must search *every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found." *Neigh. All.*, 172 Wn.2d at 720. "'[A] search need not be perfect, only adequate.'" *Neigh. All.*, 172 Wn.2d at 720 (quoting *Meeropol v. Meese*, 252 U.S. App. D.C. 381, 395, 790 F.2d 942 (1986)).

The agency bears the burden of showing it performed an adequate search. RCW 42.56.550(1). "To do so, the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith." *Neigh. All.*, 172 Wn.2d at 721. These "should include the search terms and the type of search performed, and they should establish that all places likely to contain responsive materials were searched." *Neigh. All.*, 172 Wn.2d at 721. "Purely speculative claims about the existence and discoverability of other documents will not overcome an agency affidavit, which is accorded a presumption of good faith." *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 867, 288 P.3d 384 (2012).

An agency that conducts a search "'reasonably calculated to uncover all relevant documents'" is not liable under the PRA. *Forbes*, 171 Wn. App. at 866 (quoting *Neigh. All.*, 172 Wn.2d at 720).

After reviewing the record, we conclude that DOE performed an adequate search. Many of the documents Millennium sought, particularly those that are at issue here, appear to have been

7

generated by ICF. Thus, when DOE received Millennium's public records requests, it forwarded those requests to ICF. ICF then sent documents to Millennium along with memoranda explaining its responses. DOE then produced the documents it had received from ICF, along with ICF's memoranda, to Millennium. DOE's production included the administrative record that ICF compiled.[2]

Additionally, DOE conducted broad searches across multiple agency programs. In response to Millennium's four records requests, DOE spent approximately 795 hours and produced over 377,000 documents. Although Millennium points to documents that DOE failed to produce, because we conclude that DOE performed an adequate search, DOE's failure to disclose these records does not create a per se PRA violation. *Block*, 189 Wn. App. at 278. As discussed below, DOE's performed its searches in a manner reasonably calculated to find all relevant documents.

Furthermore, we reject Millennium's argument that the documents it sought were clearly responsive to its request and therefore DOE's search was inadequate. Millennium's request sought any and all records related to the "data and assumptions" that DOE or ICF used in the EIS's GHG emissions analysis. Subsequently, Millennium has stated that its request sought "System Summary Reports," which are "standard output files produced" by ICF. CP at 17. Similarly, Millennium asserts that these "input files and output files" are required to validate the EIS's analysis.

Thus, Millennium implicitly concedes that there are more accurate terms to describe the documents and underlying data that its original request sought. The PRA requires a requester

---

[2] Millennium argues that DOE did not carry its burden to show that its search was reasonable because it introduced no evidence of the search ICF performed. However, Millennium did not sue ICF. Nor did Millennium sue the County. ICF's work product was the "sole and absolute property of the County." CP at 172. And the County, in August 2017, told ICF that it would no longer authorize it to work on DOE's public records requests. Therefore, we reject Millennium's argument.

make "'a reasonable description enabling the government employee to locate the requested records.'" *Bonamy v. City of Seattle*, 92 Wn. App. 403, 410, 960 P.2d 447 (1998) (quoting *Bristol-Myers Co. v. F.T.C.*, 138 U.S. App. D.C. 22, 25, 424 F.2d 935 (1970)). Although "data and assumptions" may encompass the files that Millennium seeks, "'a search need not be perfect, only adequate.'" *Neigh. All.*, 172 Wn.2d at 720 (quoting *Meeropol*, 252 U.S. App. D.C. at 395). Given the language Millennium used in its records request, we conclude that DOE's search was "reasonably calculated to uncover all relevant documents," and therefore, we conclude that DOE's search was adequate. *Neigh. All.*, 172 Wn.2d at 720.

Finally, we reject Millennium's argument that relies on DOE's response to its interrogatory. Millennium's interrogatory asked DOE if it possessed GHG modeling data and, if so, asked about its status for production. DOE responded that, after receiving the modeling data from ICF, it had produced that data to Millennium in August and September of 2017. Millennium claims that DOE's response indicates that the agency was aware that Millennium's original request sought outputs, which DOE did not provide.

However, reading DOE's response in context simply shows that, at the time it responded to Millennium's interrogatory in January 2018, it believed that it had complied with Millennium's July 2017 request. In August 2017, DOE had received documents from ICF and produced those to Millennium in August and September. DOE did not learn that Millennium's interpretation of "data and assumptions" included output and formulae until May 2018, when Millennium filed its motion to compel. Thus, in January 2018, DOE understood Millennium's interrogatory, inquiring about "modeling data," as synonymous with its public records request, seeking "data and assumptions," which DOE believed it had produced. Therefore, we reject Millennium's argument.

Based on all of the above, we conclude that DOE's search was adequate and thus DOE did not violate the PRA.[3]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, C.J.

Sutton, J.

---

[3] Millennium argues that it is entitled to attorney fees and a per diem penalty. Because Millennium is not a prevailing party, we decline to award it fees or a per diem penalty. RCW 42.56.550(4).